COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, McClanahan and Haley
Argued at Richmond, Virginia


ROYALLE DESHAVON GOODE
                                                                OPINION BY
v.        Record No. 1330-07-2                      JUDGE ELIZABETH A. McCLANAHAN
                                                                  JULY 22, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
L.A. Harris, Jr., Judge

Brice Lambert (Leonard W. Lambert & Associates, on brief), for
appellant.

Jennifer C. Williamson, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


In a bench trial, Royalle Deshavon Goode was convicted of attempted robbery, in

violation of Code §§ 18.2-26 and 18.2-58, and aggravated malicious wounding, in violation of

Code § 18.2-51.2.[1]   On appeal, Goode challenges the sufficiency of the evidence for these two

convictions.  For the following reasons, we affirm both convictions.

BACKGROUND

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citations omitted).

That principle requires us to "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

---

[1] Goode pled guilty to conspiracy to commit robbery, in violation of Code §§ 18.2-22 and
18.2-58.

all fair inferences that may be drawn therefrom." Kelly v. Commonwealth, 41 Va. App. 250, 254, 584 S.E.2d 444, 446 (2003) (*en banc*) (internal quotation marks and citations omitted).

While on duty at a government building, sixty-four-year-old James Crouch, an armed security guard for Henrico County, was attacked by an individual armed with a baseball bat. At trial, Crouch recalled being on the ground after the initial strike, looking up and seeing someone attacking him, but not seeing his attacker's face. Crouch remembered being struck three times with the bat, at which time he managed to retrieve his revolver from his weapon belt and fire three rounds at the attacker, who fled.

As a result of the attack, Crouch sustained a crushed right index finger, a facial fracture, severe neck pain, and head trauma, which caused vertigo, chronic instability, and balance disorder. The Commonwealth established through expert medical testimony that, while Crouch's vertigo would eventually resolve with continued therapy, Crouch would suffer permanent chronic instability. The parties also stipulated, based on a medical report, that Crouch suffered a five percent permanent disability to his right hand.[2]

Henrico Police Investigator Thomas Holsinger testified that, after responding to the scene of the attack, he received information that a patient was being treated for a gunshot wound at a nearby hospital. Holsinger interviewed the patient, Jacquan Cotman (Goode's codefendant), at the hospital. Cotman admitted his involvement in the attack on Crouch, explaining that he wanted Crouch's gun, but denied hitting Crouch with a baseball bat. Cotman claimed Goode struck Crouch with Cotman's bat while Cotman "went for the gun." Failing in his attempt to take the gun from Crouch, Cotman ran. Cotman then realized about fifteen minutes later that he

---

[2] The crime of aggravated malicious wounding requires proof that the victim suffered a "permanent and significant physical impairment" as a result of the injury maliciously inflicted by the defendant, "with the intent to maim, disfigure, disable or kill" the victim. Code § 18.2-51.2(A). See Martinez v. Commonwealth, 42 Va. App. 9, 18, 590 S.E.2d 57, 63 (2003).

had been shot in the arm. He also indicated to Holsinger that it was Goode's plan for the two of them to attack the security guard.

Holsinger subsequently questioned Goode. According to Goode, it was Cotman who planned the attack for the purpose of taking Crouch's gun. The plan was for Cotman to hit Crouch while Goode grabbed the gun. As agreed the previous day, the two met at a gas station near the government building and hid behind bushes located beside of the building while waiting on Crouch to appear. They both wore bandanas across their faces; Cotman was armed with the baseball bat, and Goode possessed a steel bar, which he was supposed to use in the attack. Holsinger described Goode's weapon, which was recovered during the investigation, as a "dumb bell" bar used to attach weights for lifting.

Goode further stated to Holsinger that when Crouch came out of the building, Cotman asked Goode if he was "ready," after which Cotman "hit the dude and he fell." Goode thought Cotman had killed Crouch. Goode told Holsinger he was unable to go through with the plan "at the last minute," watched from the bushes as Cotman attacked Crouch, and ran after he heard the gunshot.

At trial, Goode testified on his own behalf consistent with his statements to Holsinger, while admitting to additional details of the crimes. Significantly, Goode admitted that both he and Cotman appeared at the scene of the crimes dressed in black clothing. He then hid behind the bushes with Cotman for about thirty minutes, waiting on Crouch to appear. While waiting, they laughed about what they were doing, discussed the plan, and decided to put on their bandanas. Furthermore, Goode never expressed to Cotman that he was having any reservations about going through with the plan.

The trial judge found Goode guilty of both attempted robbery and aggravated malicious wounding, reasoning that Goode engaged in a "concert of action" with Cotman to such an extent that Goode was, at the very least, a principal in the second degree.

ANALYSIS

When reviewing a challenge to the sufficiency of the evidence, "the judgment of the trial court sitting without a jury is entitled to the same weight as a jury verdict." Saunders v. Commonwealth, 242 Va. 107, 113, 406 S.E.2d 39, 42 (1991) (citation omitted). Accordingly, this Court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original). Rather, "the relevant question is whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). See Seaton v. Commonwealth, 42 Va. App. 739, 746-48, 595 S.E.2d 9, 12-13 (2004).

Goode does not challenge the fact that Crouch was the victim of attempted robbery and aggravated malicious wounding as a result of the attack. Goode contends, however, that he "remained in the bushes" while Cotman carried out the attack. Thus, according to Goode, he was guilty only of conspiracy to commit robbery, to which he pled guilty, based on his participation with Cotman in planning the attack. Cotman, on the other hand, claimed Goode assaulted Crouch with the baseball bat while Cotman went for Crouch's gun. Even assuming, *arguendo*, that Goode's version of the events is correct, we conclude the evidence established that Goode was a principal in the second degree as to both attempted robbery and aggravated malicious wounding. Goode was thus subject to be "indicted, tried, convicted and punished in all respects as if a principal in the first degree." Code § 18.2-18; see Muhammad v. Commonwealth, 269 Va. 451, 482, 619 S.E.2d 16, 33 (2005), cert. denied, 547 U.S. 1136 (2006); Allard v. Commonwealth, 24 Va. App. 57, 63, 480 S.E.2d 139, 142 (1997).

- 4 -

As the Virginia Supreme Court explained in <u>Muhammad</u>, in felony cases, it is well established that

> "[a] principal in the first degree is the actual perpetrator of the crime. A principal in the second degree, or an aider or abettor as he is sometimes termed, is one who is present, actually or constructively, assisting the perpetrator in the commission of the crime. In order to make a person a principal in the second degree actual participation in the commission of the crime is not necessary. The test is whether or not he was encouraging, inciting, or in some manner offering aid in the commission of the crime. If he was present lending countenance, or otherwise aiding while another did the act, he is an aider and abettor or principal in the second degree."

<u>Muhammad</u>, 269 Va. at 482, 619 S.E.2d at 32-33 (quoting <u>Jones v. Commonwealth</u>, 208 Va. 370, 372-73, 157 S.E.2d 907, 909 (1967)). A principal in the second degree is, therefore, required under this test to "'share the criminal intent of the actual perpetrator or be guilty of some overt act,'" <u>id.</u> (quoting <u>Hall v. Commonwealth</u>, 225 Va. 533, 536, 303 S.E.2d 903, 904 (1983)), which are questions of fact to be resolved by the fact finder. <u>See</u> <u>McGhee v. Commonwealth</u>, 221 Va. 422, 427, 270 S.E.2d 729, 733 (1980). <u>See also</u> <u>Rollston v. Commonwealth</u>, 11 Va. App. 535, 540, 399 S.E.2d 823, 826 (1991) (To "'share the criminal intent' has been interpreted to mean that 'the accused must either know or have reason to know of the principal's criminal intention and must intend to encourage, incite, or aid the principal's commission of the crime.'" (quoting <u>McGhee</u>, 221 Va. at 427, 270 S.E.2d at 732)); <u>Ramsey v. Commonwealth</u>, 2 Va. App. 265, 269, 343 S.E.2d 465, 468 (1986) (explaining that defendant must have "intended his words, gestures, signals or actions to in some way encourage, advise, or urge, or in some way help the person committing the crime to commit it" (citation omitted)).

Here, Goode admitted that, the day after he and Cotman planned the attack on Crouch, the two of them met late in the evening at a gas station near the scene of the attack, pursuant to their plan. Both were dressed in black and armed with bludgeoning weapons. They then

proceeded to their hiding place behind the bushes next to the government building, where they waited for thirty minutes for Crouch to appear. During that time, as Goode testified, he and Cotman discussed the plan to attack Crouch, laughed about it, and covered their faces with bandanas. And Goode never expressed any reservations to Cotman about the attack. See Pugliese v. Commonwealth, 16 Va. App. 82, 93-94, 428 S.E.2d 16, 25 (1993) (Defendant's presence at the commission of the crime "'without disapproving or opposing it'" is evidence which, "'in connection with other circumstances,'" the trier of fact may consider in determining whether the defendant is an aider and abettor. (quoting Foster v. Commonwealth, 179 Va. 96, 99-100, 18 S.E.2d 314, 316 (1942))).[3]

These facts provide more than adequate support for a finding that Goode was "present lending countenance" to Cotman to commit the planned attack, by advising, encouraging, inciting, and/or urging Cotman to do so—even if Goode did not actually engage in the attack itself. Muhammad, 269 Va. at 482, 619 S.E.2d at 32 (citation omitted). That is to say, evidence of Goode's conduct in concert with Cotman and proximity to the attack was ample proof of Goode's presence, shared criminal intent, and overt criminal acts in furtherance of the attack. See Allard, 24 Va. App. at 62-64, 480 S.E.2d at 141-42; Pugliese, 16 Va. App. at 93-94, 428 S.E.2d at 25; Rollston, 11 Va. App. at 539-49, 399 S.E.2d at 825-31; cf. Jones, 208 Va. at 373-74, 157 S.E.2d at 909-10. The trial court, as the trier of fact, thus rationally found that

---

[3] As we further explained in Pugliese:

> While mere presence at the scene of a crime or knowledge that a crime is going to be committed does not constitute aiding and abetting, accompanying a person with full knowledge that the person intends to commit a crime and doing nothing to discourage it bolsters the perpetrator's resolve, lends countenance to the perpetrator's criminal intentions, and thereby aids and abets the actual perpetrator in the commission of the crime.

Pugliese, 16 Va. App. at 94, 428 S.E.2d at 25.

Goode was a principal in the second degree in commission of the crimes of attempted robbery and aggravated malicious wounding.

For these reasons, we affirm Goode's convictions.

*Affirmed.*