PRESENT: All the Justices

COMMONWEALTH OF VIRGINIA

OPINION BY
v. Record No. 151514                    JUSTICE WILLIAM C. MIMS
                                         October 27, 2016

BRADY ARNOLD PROFFITT, JR.

FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
David B. Carson, Judge

In this appeal, we consider whether the circuit court abused its discretion by excluding the testimony of two witnesses in a trial under the Civil Commitment of Sexually Violent Predators Act ("SVPA"), Code §§ 37.2-900 et seq.

I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

On August 12, 2014, the Commonwealth initiated proceedings under the SVPA to involuntarily commit Brady Arnold Proffitt, Jr. as a sexually violent predator. The matter proceeded to a jury trial, where the Commonwealth introduced into evidence an order convicting Proffitt of rape in December 2012. The Commonwealth's first witness was Dr. Doris Nevin, a clinical psychologist, whom the circuit court qualified as an expert "in clinical psychology and in the diagnosis, risk assessment and treatment of sex offenders." Dr. Nevin testified that she "complete[d] a sexually violent predator evaluation" of Proffitt. In the course of this evaluation, she met with Proffitt and reviewed "a wide variety of documents," including his "criminal record, the institutional record at the facility where he was housed, [and] his medical records." Significantly, Dr. Nevin reviewed a police report given by M.J., the victim of the 2012 rape.

Dr. Nevin also reviewed another police report given by A.G. in November 2007 that resulted in a rape indictment against Proffitt. That charge was *nolle prossed*. Therefore, Dr. Nevin did not rely on the details of the police report when formulating her opinion.

1

Dr. Nevin diagnosed Proffitt with sexual sadism disorder, antisocial personality disorder, and alcohol use disorder. She explained that a diagnosis of sexual sadism disorder requires two diagnostic criteria:

> A. *Over a period of at least 6 months*, [the individual has] recurrent and intense sexual arousal from the physical or psychological suffering of another person, as manifested by fantasies, urges, or behaviors[; and]
>
> B. The individual has acted on these sexual urges with a nonconsenting person, or the sexual urges or fantasies cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.

American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 695 (5th ed. 2013) (emphasis added) ("DSM-V"). Dr. Nevin testified that "in [Proffitt's] case," there had been "at least one convicted behavior, in which [he had] . . . gone out and has gotten pleasure . . . in sexually hurting" a nonconsenting person. Additionally, Dr. Nevin administered the Multiphasic Sex Inventory II ("MSI-II") to Proffitt in May 2014, and his responses indicated that he was having sadistic fantasies at that time. Dr. Nevin opined that Proffitt was "a sexually violent predator" and "at risk to commit new contact sex offenses if he were released . . . in the absence of treatment."

After Dr. Nevin's testimony, the Commonwealth attempted to call A.G. and M.J. as witnesses. Proffitt objected that A.G.'s testimony was not relevant because Dr. Nevin did not rely on the 2007 incident in preparing her opinion. Proffitt argued that her testimony would serve no purpose "other than to incense and charge the jury emotionally." Similarly regarding M.J., Proffitt argued that his conviction was already in evidence, and her testimony would only "throw[] fuel on that fire." The Commonwealth responded that testimony by A.G. and M.J. was "relevant, because [it] showed [Proffitt's] . . . M.O., or his scheme." The Commonwealth also

asserted that "the details" of the incidents would allow Dr. Nevin to "strengthen" her diagnoses and opinion.

The circuit court granted Proffitt's motion to exclude the witnesses:

> With [Proffitt] conceding the first prong of the test, the only two prongs that are at issue are the diagnosis of either the mental abnormality or the personality disorder, which [Dr. Nevin has] testified to, and the likelihood to re-offend, which she's testified to. Their testimony, I cannot see how that would do anything, it would inflame the jury, perhaps, but I don't think it could add to the . . . to the relevant issue or anything relevant to the two issues that remain.

The Commonwealth then made a detailed proffer of the testimony expected to be given by A.G. and M.J. A.G. would testify that in November 2007, Proffitt convinced her to get into his vehicle and drove to "pretty isolated" "back roads." He told A.G. that she "needed to have sex with him or spend the night at his home, or else, he was just going to . . . drop her off there." A.G. refused, but Proffitt "pulled her out of the truck" and had "sexual intercourse with her against her will and by force." A.G. contacted the police, and Proffitt was indicted for rape, but this charge was *nolle prossed*.

The Commonwealth then proffered that M.J. would testify "to a very similar pattern of behavior" in December 2012. Proffitt convinced M.J. to get into his car and took her "on the back roads." He told her that "she needed to do him a favor" and to "take her pants off." After she complied, Proffitt "raped her against her will by force, and [M.J.] tried to fight him off." The Commonwealth noted that these two incidents occurred five years apart.

Finally, the Commonwealth proffered that after "Dr. Nevin heard the testimony, or if it was presented to her in a hypothetical," she could then "take the 2007 event as true" to "strengthen her diagnoses for the sexual sadism disorder and . . . antisocial personality disorder."

3

After deliberation, the jury found that the evidence had failed to prove that Proffitt was a sexually violent predator, and the Commonwealth moved to set aside the verdict. The circuit court denied the motion and entered a final order in accordance with the jury's verdict. We awarded the Commonwealth this appeal.

## II. ANALYSIS

In its sole assignment of error, the Commonwealth contends that the circuit court abused its discretion by excluding the testimony of A.G. and M.J. as irrelevant, unfairly prejudicial, and cumulative. Proffitt responds that the excluded evidence would not provide any new information that Dr. Nevin had not previously reviewed and incorporated into her opinion. Rather, it would cause unfair prejudice by inflaming the jury's emotions. Accordingly, Proffitt argues that the circuit court did not abuse its discretion.

### A. Standard of Review

"[W]e review a trial court's decision to admit or exclude testimony using an abuse of discretion standard." *Harman v. Honeywell Int'l, Inc.*, 288 Va. 84, 97, 758 S.E.2d 515, 523 (2014) (citation omitted).

> An abuse of discretion can occur in three principal ways: when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

*Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011) (internal quotation marks and alteration omitted).

### B. Relevance and Materiality

Under Virginia Rule of Evidence 2:401, "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it

4

would be without the evidence." The scope of relevant evidence in Virginia is quite broad, as "[e]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant." *Virginia Elec. & Power Co. v. Dungee*, 258 Va. 235, 260, 520 S.E.2d 164, 179 (1999); *see also* Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 6-1, at 342 (7th ed. 2012) ("If [evidence] has *any* probative value, however slight – i.e., if it has any tendency whatsoever to prove or disprove the point upon which it is introduced – it is relevant.").

"While evidence may be relevant in that it tends to establish the proposition for which it was offered, in order to be admissible, it must also be material . . . ." *Brugh v. Jones*, 265 Va. 136, 139, 574 S.E.2d 282, 284 (2003). To be material, "the evidence [must] tend[] to prove a matter that is properly at issue in the case." *Id.* Indeed, this materiality requirement is built into Rule 2:401's language, which states that the evidence must be probative of a "fact in issue." "Strictly speaking, therefore, evidence must be both relevant and material to be admissible, and it is inadmissible if it fails to satisfy either of these criteria." Friend & Sinclair, *supra*, § 6-1, at 342 (citations omitted).

Code § 37.2-900 defines "[s]exually violent predator" as

> any person who (i) has been convicted of a sexually violent offense, or has been charged with a sexually violent offense and is unrestorably incompetent to stand trial pursuant to § 19.2-169.3; and (ii) because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts.

The Commonwealth bears the burden of proving by clear and convincing evidence both of the above elements. Code § 37.2-908(C); *McCloud v. Commonwealth*, 269 Va. 242, 257, 609 S.E.2d 16, 24 (2005). By definition, therefore, these are the material issues in the present case,

5

and "evidence that tends to prove or is otherwise pertinent to either of those [issues] is relevant." *McCloud*, 269 Va. at 257, 609 S.E.2d at 24.

C.      Probative Value Versus Unfair Prejudice

While generally "[a]ll relevant evidence is admissible," Va. R. Evid. 2:402, "[r]elevant evidence may be excluded if . . . the probative value of the evidence is *substantially outweighed* by . . . the danger of unfair prejudice." Va. R. Evid. 2:403(a)(i) (emphasis added). It is well-settled that "'[t]he responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court.'" *Ortiz v. Commonwealth*, 276 Va. 705, 715, 667 S.E.2d 751, 757-58 (2008) (quoting *Spencer v. Commonwealth*, 240 Va. 78, 90, 393 S.E.2d 609, 617 (1990)). When balancing these considerations, it is of course true that "all probative direct evidence generally has a prejudicial effect to the opposing party." *Lee v. Spoden*, 290 Va. 235, 251, 776 S.E.2d 798, 806 (2015) (citing *Powell v. Commonwealth*, 267 Va. 107, 141, 590 S.E.2d 537, 558 (2004)). Thus, the relevant question is "whether the probative value of the evidence is substantially outweighed by its *unfair* or *unduly* prejudicial effects." Id. at 252, 776 S.E.2d at 807 (citing *Gamache v. Allen*, 268 Va. 222, 227, 601 S.E.2d 598, 601 (2004)).

"'[U]nfair prejudice' refers to the tendency of some proof to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Id.* at 251, 776 S.E.2d at 807. The term

> speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt [or liability] on a ground different from proof specific to the [case elements]. "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.

6

*Id.* at 251-52, 776 S.E.2d at 807 (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (construing the federal analogue to Va. R. Evid. 2:403)).

### D. The Circuit Court Abused Its Discretion

It is not contested that Proffitt was convicted of a sexually violent offense, satisfying the first statutory prong. The remaining issue was whether, "because of a mental abnormality or personality disorder, [Proffitt] finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts." Code § 37.2-900. The circuit court abused its discretion by holding that the excluded testimony was not relevant to this material issue. Likewise, it was not unfairly prejudicial when balanced against its probative value.[1]

First, under Code § 37.2-900, the Commonwealth was required to prove that Proffitt had a mental abnormality or personality disorder. It relied, in part, on Dr. Nevin's opinion that Proffitt suffered from sexual sadism disorder. As Dr. Nevin explained, to be diagnosed with this disorder under the DSM-V, an individual must, "*[o]ver a period of at least 6 months*," have "recurrent and intense sexual arousal from the physical or psychological suffering of another person, as manifested by fantasies, urges, or behaviors." DSM-V, *supra*, at 695 (emphasis added).

Dr. Nevin opined that the six month requirement was satisfied after considering Proffitt's behavior from the rape of M.J. in 2012 along with his sadistic fantasies that were demonstrated through the MSI-II in May 2014. Notably, Dr. Nevin did not rely on the 2007 incident when she diagnosed Proffitt. If A.G.'s testimony had been admitted, however, Dr. Nevin could have included it in her diagnosis and opinion. Not only could this evidence have strengthened her

---

[1] Narrowly read, the circuit court's ruling was limited to relevance. However, the record reflects that the court was concerned about unfair prejudice. Both parties briefed and argued this issue and neither objected to its consideration. Since it is likely to arise on remand, we analyze it herein. *See, e.g.*, *Cain v. Lee*, 290 Va. 129, 136, 772 S.E.2d 894, 897 (2015) (citing *Harman*, 288 Va. at 95-96, 758 S.E.2d at 522).

diagnosis, but it could have demonstrated that Proffitt's sexual sadism disorder was more extensive than the evidence otherwise established, with a specific example of sexually sadistic *behavior* dating back to 2007.

Additionally, the excluded testimony was probative of whether Proffitt finds it difficult to control his predatory behavior and is likely to commit sexually violent offenses in the future. The United States Supreme Court has recognized, in the context of a sexually violent predator civil commitment case, that "'previous instances of violent behavior are an important indicator of future violent tendencies.'" *Kansas v. Hendricks*, 521 U.S. 346, 358 (1997) (quoting *Heller v. Doe*, 509 U.S. 312, 323 (1993)); *see also McCloud*, 269 Va. at 257-58, 609 S.E.2d at 24 ("Beyond question, evidence that [the defendant] had been convicted of an abduction related to a rape and evidence that he had been convicted for indecent liberties were pertinent to the question whether McCloud was likely to commit sexually violent acts in the future and, thus, were relevant."). The excluded testimony demonstrates two instances where Proffitt engaged in predatory and sexually violent behavior. And as "previous instances of violent behavior are an important indicator of future violent tendencies," *Hendricks*, 521 U.S. at 358, the testimony of each witness, standing alone, was inherently probative of whether Proffitt is likely to engage in sexually violent acts in the future. *See Schall v. Martin*, 467 U.S. 253, 278 (1984) ("[A] prediction of future criminal conduct is 'an experienced prediction based on a host of variables.'" (quoting *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 16 (1979))).

When the similar nature and corresponding details of the two incidents are considered together, they are highly probative of Proffitt's difficulty in controlling his predatory behavior and likelihood of re-offending. The mirror-image nature of each incident gives insight into Proffitt's mental state and even demonstrates a strategy he repeatedly implemented to satisfy his

8

predatory impulses. The details of the incidents show a pattern of predatory behavior. Not only does this pattern indicate that Proffitt has been unable control his predatory urges, but it also gives reason to conclude that he may be unable to do so in the future.

### E. The Testimony Also Has Corroborative Value

Furthermore, the testimony of A.G. and M.J. is corroborative of Dr. Nevin's opinion.

> Corroborative evidence is such evidence as tends in some degree, of its own strength and independently, to support some essential allegation or issue . . . testified to by the witness whose evidence is sought to be corroborated . . .; and such corroborating evidence must, of itself, without the aid of any other evidence, exhibit its corroborative character by pointing with reasonable certainty to the allegation or issue which it supports, and such evidence will not be material unless the evidence sought to be corroborated itself supports the allegation or the point in issue.

*Davies v. Silvey*, 148 Va. 132, 138, 138 S.E. 513, 515 (1927) (internal quotation marks omitted). Dr. Nevin concluded that Proffitt was a sexually violent predator as defined by Code § 37.2-900. She testified that he was at risk to commit sexually violent offenses if released without treatment. As discussed above, the excluded testimony independently supports these conclusions. It is, therefore, relevant corroborative evidence.

### F. Balancing Probative Value and Prejudice

Thus, the excluded testimony was relevant, and the circuit court erred by determining that it was not. Our review of the circuit court's holding, however, does not end there. As noted above, when "determining whether relevant evidence should be admitted, the trial court must apply a balancing test to assess the probative value of the evidence and any undue prejudicial effect of that evidence." *McCloud*, 269 Va. at 257, 609 S.E.2d at 24 (citing *Dandridge v. Marshall*, 267 Va. 591, 596, 594 S.E.2d 578, 581 (2004)). Under this balancing test, relevant

9

evidence will only be excluded when its probative value is "substantially outweighed" by its unfair prejudice. Va. R. Evid. 2:403(a)(i).

In conducting this balancing test, the circuit court concluded that the testimony might "inflame" the jury. On the other side of the scale, the circuit court concluded that the testimony would not "add to the . . . relevant issue or anything relevant to the two issues that remain." As demonstrated above, however, the circuit court did not properly evaluate the probative value. Indeed, the excluded testimony was highly probative direct evidence tending to establish the material issues remaining before the jury. As the circuit court did not properly evaluate this probative value, its balancing analysis was flawed.

"[A]ny probative direct evidence generally has a prejudicial effect to the opposing party." *Lee*, 290 Va. at 251, 776 S.E.2d at 806. In a proceeding under the SVPA, the Commonwealth is necessarily attempting to demonstrate that the respondent has a "mental abnormality or personality disorder" that makes it difficult for him to control his "predatory behavior," thereby making him "likely to engage in sexually violent acts." Code § 37.2-900. The excluded testimony, however, was not unfairly prejudicial. Unfairly prejudicial evidence "'lure[s] the factfinder into declaring guilt [or liability] on a ground different from proof specific to the [case elements].'" *Lee*, 290 Va. at 252, 776 S.E.2d at 807 (quoting *Old Chief*, 519 U.S. at 180). The excluded testimony, on the other hand, would directly establish the specific elements of the case. *See Powell v. Commonwealth*, 267 Va. 107, 141, 590 S.E.2d 537, 558 (2004) ("[D]irect evidence . . . is rarely subject to exclusion on the ground that it would be unduly prejudicial.").

It is true that under Virginia Rule of Evidence 2:404(b), "evidence of other crimes, wrongs, or acts is generally not admissible to prove the character trait of a person in order to show that the person *acted* in conformity therewith." (Emphasis added). In the present case,

10

however, the material issue is not whether Proffitt committed a specific act at a particular time. Rather it is whether, because of a mental abnormality or personality disorder, he finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts in the future. This is a broader question that requires proof of a character trait as a required element. It is therefore proper to prove this character trait by evidence of specific instances of conduct. Va. R. Evid. 2:405(b).

Thus, the unfair prejudice, if any, did not substantially outweigh the probative value. In fact, the converse is true. "Any prejudicial effect this evidence might have had on the minds of the jurors was far outweighed by its probative value on the issue to be determined by the jury." *McCloud*, 269 Va. at 258, 609 S.E.2d at 24.

## G. The Testimony was not Cumulative

Proffitt argues that the evidence was appropriately excluded because it was needlessly cumulative of Dr. Nevin's testimony.[2] "Relevant evidence may be excluded if . . . the evidence is needlessly cumulative." Va. R. Evid. 2:403(b). We do "not . . . look at the effect to be produced" by evidence when considering whether it is cumulative, but rather to the "*kind and character of the facts*." *St. John v. Alderson*, 73 Va. (32 Gratt.) 140, 143 (1879). Indeed, "[t]he facts may tend to prove the same proposition, and yet be so *dissimilar in kind* as to afford no

---

[2] As a threshold matter, Proffitt argues that, under the doctrine that a party may not "approbate and reprobate," the Commonwealth cannot argue, on appeal, that the testimony was not cumulative. *See Hurley v. Bennett*, 163 Va. 241, 252, 176 S.E. 171, 175 (1934) ("A party cannot in the course of the same litigation occupy inconsistent positions."). The record here, however, does not support the inference that the prosecution took inconsistent positions. During a break in Dr. Nevin's testimony, the Commonwealth told the circuit court judge that she didn't "anticipate" her "two other witnesses" taking that long. She specified that the remaining witnesses would be "just more of the same." Proffitt argues that this statement conceded that the testimony of A.G. and M.J. is cumulative of Dr. Nevin's testimony. This argument fails, however, because the Commonwealth's statement cannot be fairly construed as electing a position – it was not made in the context of any argument, nor was it a request for the circuit court to take some specified action.

preten[s]e for saying they are cumulative." *Id.*; *see also Egan v. Butler*, 290 Va. 62, 73, 772 S.E.2d 765, 771 (2015) (evidence that was "sufficiently different in kind and degree with such admitted evidence" was not "needlessly cumulative"). "Cumulative testimony is repetitive testimony that restates what has been said already and adds nothing to it. It is testimony of the same kind and character as that already given." *Massey v. Commonwealth*, 230 Va. 436, 442, 337 S.E.2d 754, 758 (1985) (citing *St. John*, 73 Va. (32 Gratt.) at 143). A party may offer multiple forms or sources of evidence to establish a matter, and the fact that offered evidence is "cumulative to some extent" will not preclude its consideration by the trier of fact. *Id.* (citing *Lacks v. Commonwealth*, 182 Va. 318, 324, 28 S.E.2d 713, 715 (1944)).

The only overlap between Dr. Nevin's testimony and that of A.G. and M.J. was in the effect to be produced – proving the elements of Code § 37.2-900. The kind and character of the testimony was substantially different. While Dr. Nevin examined the details of the incidents as revealed in the police reports, she did not testify about these details when giving her opinion. In fact, she did not even rely upon the incident involving A.G. in forming her opinion. The excluded testimony, on the other hand, would have revealed the similar nature of both incidents, which was independently probative of Proffitt's predatory behavior and likelihood of re-offending. Thus, the witnesses would provide direct testimony that also corroborates Dr. Nevin's testimony, not repetitive iterations of what was already in evidence. *See Massey*, 230 Va. at 442, 337 S.E.2d at 758 ("[C]orroborative testimony and cumulative testimony are not the same thing.").

## B. Harmless Error

"Every man is entitled to a fair trial and to nothing more, and so . . . out of the imperative demands of common sense, has grown the doctrine of harmless error." *Oliver v. Commonwealth*,

151 Va. 533, 541, 145 S.E. 307, 309 (1928); *see also Blevins v. Commonwealth*, 267 Va. 291, 297, 590 S.E.2d 365, 368 (2004) ("a litigant is entitled to a fair, but not perfect, trial, as there are no perfect trials" (citation omitted)). Code § 8.01-678, Virginia's harmless error statute, provides that

> [w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . (2) For any other defect, imperfection, or omission in the record, or for any error committed on the trial.

Code § 8.01-678 has been applied in both criminal and civil cases. *See, e.g., Greenway v. Commonwealth*, 254 Va. 147, 154, 487 S.E.2d 224, 228 (1997). "In a civil case, the erroneous exclusion of evidence is reversible error when the record fails to show plainly that the excluded evidence could not have affected the verdict." *Barkley v. Wallace*, 267 Va. 369, 374, 595 S.E.2d 271, 274 (2004). "Thus, we consider the potential effect of the excluded evidence in light of all the evidence that was presented to the jury." *Id.*

After examining the excluded evidence in light of the entire record, we hold that the circuit court's error was not harmless. The Commonwealth's entire case was presented by one witness – Dr. Nevin. Not only would the excluded testimony have corroborated Dr. Nevin's opinion, but A.G.'s testimony specifically would have provided additional facts that Dr. Nevin could have relied upon to strengthen her diagnosis regarding the extent and length of Proffitt's sexual sadism disorder.

Notably, the record reveals that Proffitt's trial counsel effectively attacked Dr. Nevin's diagnosis of sexual sadism disorder during cross-examination. He challenged how Proffitt's responses on the MSI-II specifically revealed any fantasies, urges, or behaviors that Dr. Nevin could have relied upon to support her diagnosis. Then, during closing arguments to the jury, he

13

challenged whether the MSI-II provided specific enough information for Dr. Nevin to rely upon to support her diagnosis, stating:

> [Dr. Nevin] had very little detail and very little explanation regarding the specific questions asked that give rise to the certain findings.  I wanted to know, what answer did [Proffitt] give you [on the MSI-II] that made you think he was a sexual sadist?  I don't know.  That's her answer.  That's her report, and when you balance that answer with that diagnosis to a clear and convincing standard, they're not there.  They're not anywhere near there.

The addition of A.G's testimony in particular could have negated this argument significantly. Dr. Nevin would not have needed to rely solely on Proffitt's responses on the MSI-II to sustain her diagnosis, although she still could have.  Rather, she could also have pointed to two concrete incidents where Proffitt demonstrated sexually sadistic behavior over a five year period.

Additionally, during closing argument, Proffitt's counsel argued that "I don't think any of their evidence came close to proving that [Proffitt] . . . is so likely to commit a sexually violent offense that he should be labeled a predator."  The excluded testimony, however, was highly probative of Proffitt's predatory behavior and likelihood of committing sexually violent offenses upon release.

Thus, we conclude that the error was not harmless because "the record fails to show plainly that the excluded evidence could not have affected the verdict."  *Id.*

## III.  CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*