COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Decker and Russell
Argued at Virginia Beach, Virginia


KENNETH CHARLES VIGIL

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0805-16-1                      JUDGE MARLA GRAFF DECKER
                                                    SEPTEMBER 26, 2017

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF YORK COUNTY
                         Frederick B. Lowe, Judge Designate

             Charles E. Haden for appellant.

             John I. Jones, IV, Assistant Attorney General (Mark R. Herring,
             Attorney General, on brief), for appellee.


        Kenneth Charles Vigil appeals his three convictions for aggravated sexual battery in

violation of Code § 18.2-67.3.[1]  He challenges the credibility of the victim's testimony and

consequently reasons that the evidence did not support the convictions.  He also argues that the

trial court erred by admitting hearsay evidence as an adoptive admission under the party

admission exception to the rule against hearsay.  For the reasons that follow, we affirm the

convictions.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The appellant was acquitted of other charges against him that are not before this Court.

## I.  BACKGROUND[2]

The indictments charged the appellant with committing the offenses of aggravated sexual battery between April 6, 2001, and June 15, 2003.  M.R., the appellant's stepdaughter, testified that he sexually abused her about once a week over the course of approximately one year.  She was between ten and twelve years old when the crimes occurred.

 M.R. recalled three specific incidents of abuse, which formed the bases for the indictments.  The first occurred while she was doing homework on the computer in the bedroom shared by her mother and the appellant.  M.R. was sitting in the computer chair, and the appellant entered the room and sat down on the floor beside her.  He rubbed her legs and put his fingers into her shorts and then her vagina.  M.R. testified that she silently "wish[ed] it would just stop."  The appellant eventually got up and left the room.

According to M.R., the second incident occurred when she was lying on her bedroom floor doing homework.  She testified that the appellant entered the room and asked her to change out of her pants into shorts.  After M.R. complied, he rubbed her legs, put his hand into her shorts, and inserted his finger into her vagina.  M.R. explained that the appellant eventually stopped and left the room.

---

[2] Factual findings underlying rulings on the admissibility of evidence are subject to deference upon appellate review unless plainly wrong or without evidence to support them.  See Lynch v. Commonwealth, 46 Va. App. 342, 350, 617 S.E.2d 399, 403 (2005), aff'd, 272 Va. 204, 630 S.E.2d 482 (2006).  Accordingly, appellate review of admissibility issues, like sufficiency issues, requires us to view the evidence in the light most favorable to the party prevailing below, in this case, the Commonwealth.  See, e.g., Molina v. Commonwealth, 272 Va. 666, 675, 636 S.E.2d 470, 475 (2006); Lynch, 46 Va. App. at 345, 617 S.E.2d at 400.  Additionally, however, this case involves the application of harmless error principles.  Consequently, we set out all evidence relevant to the harmless error analysis.  See, e.g., Hooker v. Commonwealth, 14 Va. App. 454, 457-58, 418 S.E.2d 343, 345 (1992) (differentiating between harmless error review and a sufficiency analysis).

M.R. described a third incident that occurred in the family living room. As on the other occasions, the appellant rubbed her legs, then put his hand into her shorts and his finger into her vagina.

M.R. explained that the three offenses occurred when she and the appellant were alone in the house. She testified that she did not tell anyone about the abuse at the time but specifically explained that she did not report it because she was "very afraid" of the appellant, she was embarrassed, and she "tried to forget it ever . . . happened." She also said that she was concerned that her mother would not believe her.

In 2013, when M.R. was twenty-two years old, she told her boyfriend, Will Smith, about the sexual abuse. At the time, she was spending the weekend at Smith's parents' lake house. After M.R. told Smith, she telephoned her mother, Lisa Vigil, and told her that she had been "sexually abused." When she returned from the weekend, M.R. went to stay with the Smith family rather than to the home in which she lived with the appellant and her mother.

The appellant attempted to call M.R., but she did not answer when she saw his name identified on her cell phone. He eventually made contact with M.R. by using her mother's phone to call her. He told M.R. that he was sorry and that he wanted to talk. She agreed to speak with him in person if her mother was present. When she went to the house for the conversation, the appellant commented to her that Smith "must really be the one" if M.R. was "telling him all of our deepest, darkest secrets." M.R. left without engaging in any additional conversation.

Approximately two weeks later, M.R. contacted the police. Investigator Byron Evans with the York County Sheriff's Office testified that M.R. initially represented to him that the abuse occurred two or three times a week over the course of a year. According to Evans, she was unable to give him many details of the occurrences, but he explained that this was "typical" of child victims of sexual assault. The written statement that M.R. gave the police echoed her

testimony with the exception of describing the third room in which the abuse occurred as the "den" instead of the "living room."

During cross-examination, the appellant attempted to impeach M.R.'s credibility. The journals that she had kept when she was younger did not contain any mention of sexual abuse. In addition, around the time that the abuse occurred, M.R. wrote in an essay that her "family [was] the greatest gift" that she "could ever have received." At the preliminary hearing, M.R. referred to what happened as a "story," but at trial she explained that she had meant the "story of [her] life."

Sherrie Hall, a friend of the victim's mother, testified that after M.R. reported the abuse, Hall received a telephone call from Lisa Vigil, M.R.'s mother. Hall testified to the following description of the phone conversation:

> Lisa[, M.R.'s mother,] called me and said, I need to talk to you, and she was bawling, crying.

> And I said, [referencing a different child,] Is it your daughter? Is she sick again in the hospital? . . . .

> . . . .

> And she goes – she was bawling, crying, and she said, Ken[, the appellant,] molested my daughter.

> And I said, Does Ken know you're talking to me?

> And he goes, Hey, Sherrie.

> And I said, Hey, Ken.

> And then she proceeded to tell me that she didn't know what to do. She was upset.

> She was scared and then wanted to know if she should call my mom, because my mom had been through it, like when I had been abused.

Hall recognized the appellant's voice, and according to Hall at no point during the call did the appellant deny the accusation. The trial court admitted Hall's testimony over the appellant's objection.

Karen Rivera, Hall's mother, also testified. Lisa Vigil spoke to her "many times" about the accusations. According to Rivera, during one of these telephone conversations, Lisa Vigil told her that the appellant admitted to molesting M.R. and that "he was very sorry." In a subsequent conversation with Rivera, however, M.R.'s mother denied that the appellant had done "anything" and that she had ever said otherwise. The appellant did not object to Rivera's testimony.

M.R.'s friend Amber Anesqua testified that M.R. told her that she had been sexually abused when she was ten years old. Although Anesqua did not specify when M.R. told her about the abuse, Anesqua testified that before 2013, she thought that the appellant and M.R. had a "[t]ypical father[-]daughter relationship." According to Anesqua, M.R. researched child sexual abuse after she talked to the police.

The appellant testified on his own behalf. He denied having any inappropriate contact with M.R. He said that he merely apologized to M.R. "if" he had "done anything to make [her] uncomfortable."

The appellant's wife also testified in his defense. She explained that during the time period of the alleged offenses, the only computer in the house was in the home office, not the master bedroom.[3] The victim's mother also said that, despite M.R.'s statements to the contrary, the appellant was not home alone with M.R. "two or three times a week" during that period. According to the mother, she saw nothing in the relationship between the appellant and M.R. to

---

[3] A contractor testified that in 2005 there was no computer system in the appellant's bedroom. However, he did not know where the computer was between 2001 and 2003, when the charged offenses occurred.

indicate that M.R. was fearful of him or that he had sexually assaulted her. M.R.'s mother also denied telling Hall that the appellant had molested her daughter. She recalled phoning Hall to tell her about the allegation but denied that her husband listened to the conversation. Regarding her conversations with Rivera, the victim's mother also denied telling her that the appellant had admitted to molesting M.R.

The trial court convicted the appellant of three counts of aggravated sexual battery. He was sentenced to a total of forty-five years of incarceration, with thirty-six years suspended.

## II. ANALYSIS

The appellant argues that M.R.'s testimony was inherently incredible and therefore that the evidence did not support his convictions. He also contends that the trial court erred by admitting Sherrie Hall's testimony about her phone conversation with the victim's mother.

### A. Sufficiency of the Evidence

The appellant argues that the evidence was insufficient to prove that he committed aggravated sexual battery against his stepdaughter, M.R., because her testimony was incredible. In support of his claim, the appellant relies on inconsistencies in M.R.'s testimony, her failure to remember more details, and her significant delay in reporting the offenses.

The appellant was convicted of aggravated sexual battery against a minor under thirteen years of age in violation of Code § 18.2-67.3.[4] Sexual battery, in pertinent part, is defined as "an act committed with the intent to sexually molest, arouse, or gratify any person" during which the "accused intentionally touches the complaining witness's intimate parts." Code §§ 18.2-67.4, -67.10(6).

---

[4] Code § 18.2-67.3(A)(1) provides that an individual is "guilty of aggravated sexual battery if he or she sexually abuses the complaining witness" and "[t]he complaining witness is less than 13 years of age."

On appeal, this Court reviews a challenge to the sufficiency of the evidence under well-established legal principles. In our analysis, we consider "the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth." Molina v. Commonwealth, 272 Va. 666, 675, 636 S.E.2d 470, 475 (2006) (quoting Ward v. Commonwealth, 264 Va. 648, 654, 570 S.E.2d 827, 831 (2002)). The appellant was tried by the circuit court, sitting without a jury. Consequently, that court was the fact finder, and its judgment is afforded the "same weight as a jury verdict." Goode v. Commonwealth, 52 Va. App. 380, 384, 663 S.E.2d 532, 534 (2008) (quoting Saunders v. Commonwealth, 242 Va. 107, 113, 406 S.E.2d 39, 42 (1991)). This Court will reverse a conviction "only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 877 (2002)). In conducting a sufficiency analysis, the appellate court does not "substitute [its own] judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

The law is also clear that determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear the witnesses and observe them as they testify. Burnette v. Commonwealth, 60 Va. App. 462, 476, 729 S.E.2d 740, 746 (2012); see also Wilson v. Commonwealth, 46 Va. App. 73, 87, 615 S.E.2d 500, 507 (2005) ("[W]here a trial court sitting without a jury hears witnesses testify and observes their demeanor on the stand, it has the right to believe or disbelieve their

statements." (quoting Morning v. Commonwealth, 37 Va. App. 679, 686, 561 S.E.2d 23, 26 (2002))). Appellate review in this area is strictly limited. In short, the "conclusions of the fact finder on issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the witness'] testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."'" Johnson v. Commonwealth, 58 Va. App. 303, 315, 709 S.E.2d 175, 181 (2011) (alteration in original) (quoting Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991)). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" Juniper v. Commonwealth, 271 Va. 362, 415, 626 S.E.2d 383, 417 (2006) (quoting Cardwell v. Commonwealth, 209 Va. 412, 414, 164 S.E.2d 699, 701 (1968)).

A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness' testimony or statements. Testimony may be contradictory or contain inconsistencies without rising to the level of being "inherently incredible" as a matter of law. Id. (holding that facts such as delayed reporting or giving inconsistent statements during an investigation do not necessarily render a witness' testimony "unworthy of belief" but instead are appropriately weighed by the trier of fact as part of its determination of the credibility of the witness); Fordham v. Commonwealth, 13 Va. App. 235, 240, 409 S.E.2d 829, 832 (1991); see also Crump v. Commonwealth, 20 Va. App. 609, 619, 460 S.E.2d 238, 242 (1995) (holding that the inconsistencies in the testimony of two different witnesses, the victim and her mother, did not "render the evidence" supporting the conviction "incredible as a matter of law").

Consequently, as Virginia law dictates, "[p]otential inconsistencies in testimony are resolved by the fact finder," not the appellate court. Towler v. Commonwealth, 59 Va. App.

284, 292, 718 S.E.2d 463, 467 (2011). "[T]here can be no relief" in this Court if a witness testifies to facts "which, if true, are sufficient to maintain the[] verdict, . . . [i]f the trier of the facts . . . base[d] the verdict upon that testimony," even if that "witness' credit [was] impeached by contradictory statements." Smith v. Commonwealth, 56 Va. App. 711, 718-19, 697 S.E.2d 14, 17 (2010) (quoting Swanson v. Commonwealth, 8 Va. App. 376, 379, 382 S.E.2d 258, 259 (1989)).

It is also well-established that a conviction for a "sexual offense[] may be sustained solely upon the uncorroborated testimony of the victim." Wilson, 46 Va. App. at 87, 615 S.E.2d at 507; see Willis v. Commonwealth, 218 Va. 560, 563, 238 S.E.2d 811, 812 (1977).

> The reason for the rule is the typically clandestine nature of the crime. There are seldom any witnesses to such an offense except the perpetrator and the victim. . . . Thus, it is clear that the victim's testimony, if credible and accepted by the finder of fact, is sufficient evidence, standing alone, to support the conviction.

Fisher v. Commonwealth, 228 Va. 296, 299, 321 S.E.2d 202, 204 (1984).

M.R. testified that the appellant, her stepfather, put his fingers into her vagina on three different occasions when she was between ten and twelve years old. At the time of the offenses and for years thereafter, M.R. lived with the appellant and her mother. M.R. explained that she delayed reporting the conduct because she was scared, embarrassed, and had tried to forget it. Additionally, she was afraid that her mother would not believe her.

The trial court also heard testimony about the statement that M.R. made to Investigator Evans that the sexual abuse had occurred two or three times a week, rather than once a week as she testified. The passage of time easily explains M.R.'s being hesitant, inconsistent, or unable to recall certain details when discussing the unwanted intimate encounters with her stepfather, a person whom she generally respected and looked up to as a father figure. Further, M.R.'s statement was inconsistent only regarding the frequency of the abuse, which admittedly she tried

- 9 -

to forget in order to move on with her life. She detailed the three instances that resulted in the convictions. M.R. did not equivocate about the appellant's specific actions.

All of the arguments that the appellant raises now to support his challenge to the sufficiency of the evidence were adeptly raised by his trial counsel: that M.R.'s testimony was vague and contained inconsistencies, that she waited a significant amount of time before reporting the abuse, that there was no evidence that the appellant "groomed" her as pedophiles typically do with their victims, and that M.R. did not behave as though she were terrified of the appellant. These arguments were squarely before the trial court, and it had the opportunity to weigh inconsistencies and determine M.R.'s credibility.

The trial court found M.R. credible and accepted her account of the crimes. Any inconsistencies in the testimony or conflicts in the evidence were resolved by the court as trier of fact. Based on the record, a reasonable fact finder with all of the evidence before it could determine that the inconsistencies between M.R.'s testimony and her previous statement to police arose from her youth at the time of the offenses, her fragile memory, the traumatic nature of the offenses, the fact that the assailant was her stepfather, and the family dynamics associated with the years of her childhood spent living in his home. See Smith, 56 Va. App. at 719, 697 S.E.2d at 18 (noting that "a 'victim's youth, fright and embarrassment [may] provide[]'" the trier of fact "'with an acceptable explanation' for a victim's otherwise unexplainable statements or actions" (alterations in original) (quoting Corvin v. Commonwealth, 13 Va. App. 296, 299, 411 S.E.2d 235, 237 (1991))); see also Fisher, 228 Va. at 297-300, 321 S.E.2d at 202-04 (affirming a conviction where the evidence included testimony of the ten-year-old victim that she delayed reporting the abuse in part because "she 'didn't want to hurt mama'").

Contrary to the appellant's contention, we hold that M.R.'s testimony was not inherently incredible or so contrary to human experience as to render it unworthy of belief. Compare

Nobrega v. Commonwealth, 271 Va. 508, 513, 519, 628 S.E.2d 922, 924, 927 (2006) (holding that the victim, who was seven years old when she was first raped, was not inherently incredible), and Love v. Commonwealth, 18 Va. App. 84, 89-90, 441 S.E.2d 709, 712-13 (1994) (affirming convictions where the child victim delayed seven years before reporting the offenses), with Willis, 218 Va. at 563-64, 238 S.E.2d at 813 (holding that the adult witness' account of the alleged rape was "incredible as a matter of law" because her uncorroborated testimony was "replete with contradictions and inconsistencies"). The trial court's conclusion that M.R. was credible is supported by the evidence.

The record makes clear that the appellant's acts of sexual contact with M.R.'s vagina on three different occasions provided the bases for the charges, and M.R.'s testimony specifically describing the acts of sexual abuse entirely supports the convictions. Therefore, M.R.'s account alone is sufficient to prove the offenses, despite any inconsistencies between her testimony about the frequency of the abuse and other evidence.

Nevertheless, M.R.'s trial testimony, which was sufficient on its own, was corroborated by other evidence. Karen Rivera, the mother of a family friend, testified that M.R.'s mother told her that the appellant had admitted to molesting her daughter and that "he was very sorry."[5] In

---

[5] The appellant suggests that Rivera's testimony was hearsay and consequently should be considered on appeal for a very limited purpose. However, as the appellant's counsel acknowledges, trial counsel did not object to the admission of Rivera's rebuttal testimony. As a result, the trial court, as trier of fact, was permitted to consider the statement as substantive evidence. See Baughan v. Commonwealth, 206 Va. 28, 31, 141 S.E.2d 750, 753 (1965) (holding in the context of a bench trial that when hearsay is "admitted without objection," it may "properly be considered" and "given its natural probative effect"); cf. Va. R. Evid. 2:105 ("When evidence is admissible . . . for one purpose but not admissible . . . for another purpose, the court *upon motion* shall restrict such evidence to its proper scope . . . ." (emphasis added)).

addition, Sherrie Hall testified that the appellant did not deny his wife's account that he had sexually abused M.R. during a telephone conversation that Hall had with her.[6]

Finally, the trial court, as the trier of fact, was entitled to reject the appellant's claim of innocence and his "self-serving testimony." See, e.g., Rich v. Commonwealth, 292 Va. 791, 802, 793 S.E.2d 798, 804 (2016). When the fact finder concludes that a defendant's testimony is not credible, it may reject that testimony and treat his "prevarications as 'affirmative evidence of guilt.'" Sierra v. Commonwealth, 59 Va. App. 770, 784, 722 S.E.2d 656, 663 (2012) (quoting Armstead v. Commonwealth, 56 Va. App. 569, 581, 695 S.E.2d 561, 567 (2010)). The trial court's rejection of the appellant's hypothesis of innocence was not plainly wrong. See Sanford v. Commonwealth, 54 Va. App. 357, 364-65, 678 S.E.2d 842, 846 (2009); see also Wood v. Commonwealth, 57 Va. App. 286, 306, 701 S.E.2d 810, 819 (2010) (stating that whether a "hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong" (quoting Emerson v. Commonwealth, 43 Va. App. 263, 277, 597 S.E.2d 242, 249 (2004))).

The facts in this case provide more than adequate support for the findings that the appellant sexually abused M.R. on three separate occasions. Consequently, the evidence was sufficient to support the convictions.

## B. Hearsay

The appellant argues that the trial court erred by admitting Sherrie Hall's testimony about her telephone conversation with the victim's mother. The challenged testimony was that the

---

[6] Although this challenged evidence is duplicative of Rivera's testimony about the appellant's admission to the victim's mother and the evidence is sufficient to support the convictions without it, we nevertheless consider Hall's testimony for purposes of the sufficiency analysis. See Wells v. Commonwealth, 65 Va. App. 722, 726, 781 S.E.2d 362, 364 (2016) ("[W]hen reviewing the evidence for sufficiency, we must consider all the evidence admitted at trial, including evidence admitted erroneously."); Code § 19.2-324.1.

mother told Hall that the appellant had molested her daughter, and the appellant, who was with the mother at the time of the call, did not deny the accusation. Over defense counsel's objection, the trial court admitted the testimony under the party admission exception to the rule against hearsay.[7]

Based on the record, we need not decide the more complex question of whether the trial court erred in admitting the challenged testimony because any presumed error committed as a result of its admission is clearly harmless. See Commonwealth v. White, 293 Va. 411, 420, 799 S.E.2d 494, 498 (2017). "[T]he General Assembly 'deliberately engrafted' the harmless-error doctrine into the statutory law of the Commonwealth." Id. (quoting Irvine v. Carr, 163 Va. 662, 669, 177 S.E. 208, 211 (1934). Code § 8.01-678 requires harmless error review before any judgment is reversed. Consequently, "it is 'the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless' lest they 'retreat from their responsibility, becoming instead "impregnable citadels of technicality."'" White, 293 Va. at 420, 799 S.E.2d at 498 (quoting United States v. Hasting, 461 U.S. 499, 509 (1983)).

We examine the appellant's claim of evidentiary error under the standard for non-constitutional harmless error. Adams v. Commonwealth, 275 Va. 260, 277, 657 S.E.2d 87, 97 (2008). Non-constitutional error is harmless when the appellant "had a fair trial on the merits and substantial justice has been reached." Proctor v. Commonwealth, 40 Va. App. 233, 242, 578 S.E.2d 822, 827 (2003) (quoting Code § 8.01-678). This Court may uphold a decision on the

---

[7] "[A]n out-of-court statement by a criminal defendant, if relevant, is admissible as a party admission, under an exception to the rule against hearsay." Bloom v. Commonwealth, 262 Va. 814, 820, 554 S.E.2d 84, 87 (2001). Once certain conditions have been met, "[a] statement may become admissible under the adoptive admission exception to the hearsay rule upon a showing of its tacit adoption by a party . . . ." Lynch v. Commonwealth, 272 Va. 204, 209, 630 S.E.2d 482, 484 (2006). In light of our harmless error analysis, we do not decide whether the challenged evidence met the requirements for admissibility as an adopted admission. See Commonwealth v. White, 293 Va. 411, 420, 799 S.E.2d 494, 498 (2017).

ground that the alleged evidentiary error is harmless if "the error did not influence" the trier of fact "or had but very slight effect." Gonzales v. Commonwealth, 45 Va. App. 375, 384, 611 S.E.2d 616, 620 (2005) (*en banc*) (quoting Kotteakos v. United States, 328 U.S. 750, 764 (1946)).

The error is harmless "[i]f other evidence of guilt is so overwhelming and the error insignificant, by comparison, supporting a conclusion that the error did not have a substantial effect on the verdict." Angel v. Commonwealth, 281 Va. 248, 268, 704 S.E.2d 386, 398 (2011). Further, "even if the evidence of the defendant's guilt is not overwhelming," the error is harmless "if the evidence admitted in error was merely cumulative of other, undisputed evidence." McLean v. Commonwealth, 32 Va. App. 200, 211, 527 S.E.2d 443, 448 (2000) (quoting Ferguson v. Commonwealth, 16 Va. App. 9, 12, 427 S.E.2d 442, 445 (1993)); see Commonwealth v. Proffitt, 292 Va. 626, 640-41, 792 S.E.2d 3, 10 (2016) (discussing the concept of cumulative evidence in detail and noting that "testimony [must be] of the same kind and character" in order to qualify as cumulative for purposes of harmless error analysis (quoting Massey v. Commonwealth, 230 Va. 436, 442, 337 S.E.2d 754, 758 (1985))).

The Commonwealth's case relied on M.R.'s credible account of three specific incidents of sexual abuse. Hall's testimony that the appellant did not deny his wife's statement that he had molested M.R. was merely cumulative of Rivera's unobjected-to testimony that his wife told her that he had admitted to molesting M.R. and was sorry. See Proffitt, 292 Va. at 640-41, 792 S.E.2d at 10. Based on the record, it is clear that Hall's testimony about the appellant's purported adoptive admission "did not influence" the trial court as the trier of fact or "had but very slight effect." See Gonzales, 45 Va. App. at 384, 611 S.E.2d at 620 (quoting Kotteakos, 328 U.S. at 764). Consequently, even if the admission of Hall's testimony was error, that error was harmless.

### III.  CONCLUSION

We hold that M.R.'s testimony was not inherently incredible and the evidence was sufficient to support the convictions.  Further, we hold that assuming without deciding the trial court erred by admitting Hall's testimony that the appellant did not deny the mother's statement that he had abused her daughter, any such error was harmless.  Accordingly, we affirm the appellant's convictions for aggravated sexual battery.

<u>Affirmed.</u>