# Dennis Keith Massey

### v.

# Commonwealth of Virginia

Record No. 841254

November 27, 1985

Present: All the Justices

*Susan Leslie Fraser* for appellant.
*W. Mark Dunn, Assistant Attorney General (William G. Broaddus, Attorney General*, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

In a jury trial, Dennis Keith Massey was convicted of rape and sodomy. The trial court imposed the jury's sentences of 15 years in prison for each offense.

At trial, Massey's defense was that the prosecutrix had consented to the sexual acts. In support of his defense, Massey offered several witnesses in an effort to prove that at a party, which lasted from approximately 9:00 p.m. to 1:30 a.m. on the night of the attack, the prosecutrix publicly made sexually solicitous advances towards him. The trial court refused to permit two of Massey's witnesses to testify.

On appeal, Massey contends that by excluding the two witnesses the trial court violated his constitutional right to call for evidence in his favor. We agree. Therefore, we will reverse the judgment of the trial court.

This case turned on the credibility of the two principals. The prosecutrix said that Massey engaged in sex with her against her will; the defendant said that they engaged in sex with the prosecutrix's consent.

The prosecutrix testified that she agreed to attend a dance with Massey. She said that prior to the dance she was with Massey in his apartment. While there, according to her, Massey tried to kiss and hug her but she "turned around." She testified that Massey asked her whether she was afraid of him to which she replied, "[n]o, not that I know of."

She was with Massey at the dance from 9:15 p.m. to 1:30 a.m. During that time, she said she danced with him once. She admitted that, "[t]hroughout the night, there was once or twice that I did kiss him. . . ." She also admitted sitting on Massey's lap while at the dance. She stated that she did not remember whether she kissed Massey while sitting on his lap.

She testified that when Massey drove her home after the dance he asked whether he could come upstairs. She recounted that she responded she was "really tired" and wanted to go upstairs and go to bed. Nevertheless, she said they got out of the car and "we both went on upstairs into my apartment."

Once in the apartment, the prosecutrix went to check on her son while Massey went to the bathroom. She testified that when he came out of the bathroom she was "bunched up" in a chair because she was tired. She said that Massey started trying to kiss and hug her but she "turned away." "The next thing [she] knew [she] had been hit." The blow made her "head spin." "[T]o an extent it blacked [her] out for a little bit." "The next thing [she] knew, [she] was down on the floor in front of the chair where [she] was sitting." She said she told Massey to leave her alone and to "please leave," but Massey told her to go back in the bedroom. She testified that they went back to the bedroom where she "proceeded to get undressed and so did he." She got in bed and "then the sexual act started." She testified that she was unwilling to engage in sex with Massey and did so because she "was scared not to."

According to Massey, he and the prosecutrix spent virtually all of January 21, 1984 together. He said they drank liquor in Massey's apartment prior to attending a dance at the Arlington Moose Lodge where Massey played in the band.

At the dance, the prosecutrix sat at the band members' table. During breaks, according to Massey, she "was sitting in my lap, rubbing her pelvis on my lap all night long and kissing on me all night long."

Massey testified further that they left the dance at 1:30 a.m. on January 22, 1984, and went with another couple to a Denny's Restaurant for breakfast. After breakfast, Massey drove the prosecutrix to her apartment. He said she invited him in to have coffee. He testified that once in the apartment he went to the bathroom and when he came out the prosecutrix "was in the bedroom taking off her clothes." Massey said they engaged in sex "two or three" times. He denied threatening her or hitting her.

At the beginning of the trial, Massey's counsel requested that all witnesses be excluded from the courtroom. *See* Code § 19.2-265.1. The court granted the request. The Commonwealth then began its case. After the prosecutrix and another witness had testified, the court took a recess. On return to the courtroom, just as the Commonwealth was about to call a third witness, defense counsel advised the court as follows: "I believe there are some witnesses in this room, by a simple misunderstanding on their part." The court ordered the witnesses out. But before they left, the Commonwealth's attorney advised the court that he thought the witnesses had been in the courtroom "during testimony." The trial court agreed saying, "Yes. The young woman in the white sweater, and the gentleman with the blue suit." The court then instructed the witnesses concerning their exclusion from the courtroom; the witnesses were then excluded.

As Massey's first witness, defense counsel called Dianne Saylor. The Commonwealth objected to her testifying on the ground that she was one of the two people who had violated the sequestration order. The court took the motion to exclude Saylor under advisement and urged Massey's counsel to call other witnesses. Massey's counsel then called Massey.

After Massey had testified, the court heard argument on whether Dianne Saylor should be excluded. The court ruled as follows:

Well, I think it is a close question, but Ms. Saylor is a corroborative witness.

The reason she is a corroborative witness is because the defendant has testified that Ms. Smith behaved one way, and Ms. Smith has testified that she behaved in a different way.

Ms. Saylor would come on to testify to corroborate the defendant's testimony after having sat in the Courtroom and heard Ms. Smith's testimony.

I think it is a matter of discretion, and I think that in fairness, to exercise that discretion that she should not be permitted to testify, and it will be up to the jury to evaluate the testimony of the defendant and the testimony of Ms. Smith and make that determination based upon her statements without the corroboration of Ms. Saylor.

After the ruling on Ms. Saylor, Massey called Clarence Woodward and his wife to testify to the prosecutrix's conduct towards Massey at the dance. Later in the trial, Massey's counsel represented that the Woodwards were called because the court would not let Dianne Saylor testify. Mr. Woodward testified that Massey and Smith were "holding hands, talking and dancing together." Mrs. Woodward testified that she observed "nothing" occurring between the defendant and the prosecutrix.

Massey then called Stephen Saylor, Dianne Saylor's husband. Defense counsel asked the court whether Mr. Saylor was subject to the same ruling made concerning his wife. At a bench conference, the court asked what Mr. Saylor would say. Massey's counsel said "The same thing Mrs. Saylor was going to testify to." The court ruled, based on its observations, that "Mr. Saylor was not in the Courtroom for the period under the circumstances as Mrs. Saylor was." Therefore, the court permitted Mr. Saylor to testify. However, when the bailiff sought Mr. Saylor he discovered that Mr. Saylor had left the courthouse to pick up his children.

Because Mr. Saylor was unavailable, Massey's counsel called one more witness. Thereafter, the court asked whether there was more defense testimony. Defense counsel said she wanted to call Mr. Saylor, "to whom [she] did not give permission to leave." The court then asked the Commonwealth whether there would be rebuttal. When the Commonwealth replied affirmatively, the court recessed the trial until the next day.

After the jury had left for the day, the court asked defense counsel whether she had only one more witness and whether that witness was Mr. Saylor. She responded, "No, Your Honor, that is not correct. Presuming that we will continue tomorrow morning, I may be able to obtain other witnesses." In response to this statement, the court made clear that defense counsel was not to seek additional witnesses. The court stated, "[w]e are not going to take advantage of the fact that the case is getting carried over to obtain other witnesses for corroborative purposes or anything else."

The court continued saying, "The fact that I am not making you rest your case now is because I am going to give you the opportunity to call Mr. Harry [sic] Saylor tomorrow morning, is not going to be an opportunity to go out tonight and scrape up witnesses." Finally, the court stated that when trial resumed, Massey would be allowed to call Mr. Saylor and one other witness whose testimony would be limited to impeaching certain statements made by the prosecutrix at the preliminary hearing.

Despite the court's remarks, Massey's counsel said that in addition to calling Mr. Saylor she wanted to call a Mr. Langston, whom she had not subpoenaed because she thought Dianne Saylor would have testified to the same facts.

At the beginning of trial on the next day, Massey's counsel again advised the court that she wanted to call Mr. Langston. She explained that Langston would describe what he had observed at the Moose Lodge. The court again rejected the request, explaining that it believed it had discretion "to control the number of corroborative or cumulative witnesses. . . ." The court further stated that the trial

was carried over for the convenience of the defense for one witness, not for the purpose of bringing in a number of other cumulative or corroborative witnesses. That is the reason that the Court is going to only permit Mr. Saylor and the deputy to testify this morning. All things must come to an end.

After Mr. Saylor and the deputy testified, the case was submitted to the jury. At that point, the trial court permitted Massey's counsel to call Dianne Saylor and William Langston to make a proffer of their testimony for the record.

Massey argues that it was error to exclude Dianne Saylor's testimony on the basis of the rule violation because the trial court did not first determine whether the violation was intentional or inadvertent. He reasons, that if the violation was inadvertent, then the exclusion of Dianne Saylor denied him his constitutional right to call for evidence in his behalf.

With regard to Langston's testimony, Massey argues that to exclude this testimony was unwarranted and denied him his right to call for evidence in his favor. As we view this case, we need not decide the rule violation issue concerning Dianne Saylor's testi-

mony. We think that the trial court erred in excluding Langston's testimony and that error is sufficient to require a remand.

Article I, Section 8 of the Constitution of Virginia provides, in part, "That in criminal prosecutions a man hath a right . . . to call for evidence in his favor." This right is central to the proper functioning of the criminal justice system. It is designed to ensure that the defendant in a criminal case will not be unduly shackled in his effort to develop his best defense.

The Sixth Amendment to the United States Constitution is similar to our Article I, Section 8. In *Washington v. Texas*, 388 U.S. 14, 19 (1967), the U.S. Supreme Court discussed the importance of the defendant's right to present his version of the facts:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

In this case, the trial court placed impermissible limitations on the exercise of this important right. Without listening to a proffer of Langston's testimony, the court concluded that it was either corroborative or cumulative, and for that reason it could be excluded.

However, corroborative testimony and cumulative testimony are not the same thing. Cumulative testimony is repetitive testimony that restates what has been said already and adds nothing to it. It is testimony of the same kind and character as that already given. *See St. John's Ex'ors v. Alderson*, 73 Va. (32 Gratt.) 140, 143 (1879).

There is no substantial dispute that where evidence is merely cumulative its introduction may be limited by the court. Yet, because of the constitutional right to call for evidence in one's favor, even cumulative evidence should sometimes be admitted. Where testimony is material "even though cumulative to some extent" it should nonetheless be considered. *See Lacks v. Commonwealth*, 182 Va. 318, 324, 28 S.E.2d 713, 715 (1944).

■ Here, however, the evidence was not cumulative. Had Langston testified he would have said that on several occasions, when the band took breaks, he observed the prosecutrix walk up to meet Massey as he came off the stage "and put her arms about him and grabbed him around and hugged him and really pressed herself and rubbed herself against him very suggestively." This testimony contains facts not mentioned by Massey or any other witness. It is from an eyewitness and it corroborates Massey's claim of the prosecutrix's conduct while contradicting her testimony.

■ The trial court appeared to be of the view that because evidence is corroborative it can be limited. This is a mistaken view of the law. Corroborative evidence is exactly the kind of evidence that defendant was entitled to develop. In *Fuller* v. *Commonwealth*, 190 Va. 19, 55 S.E.2d 430 (1949), we discussed the meaning of corroborative evidence in a case where defendant was convicted of seduction under promise of marriage and the statute required corroboration of that promise. Extracting the principles of *Fuller*, we conclude that corroborative evidence is evidence that does not emanate from the defendant's mouth, does not rest wholly upon the defendant's credibility, but is evidence that adds to, strengthens, and confirms defendant's testimony. Langston's testimony was corroborative evidence that Massey was entitled to present.

■ The circumstances of this case underscore Massey's need for Langston's testimony. First, Massey's counsel was unable to present Dianne Saylor's testimony. In response to this situation she attempted to fill the void by calling the Woodwards. But their testimony was not helpful. Faced with this problem, Massey's counsel sought to take advantage of a recess to secure a witness to fill the gap in the evidence that resulted from the events of the first day of trial. Nothing in the law prohibits such an effort.

The trial court was concerned that the trial might go on forever. However, the record does not support that concern. Langston's testimony, if similar to the proffer, could have been developed in short order. There was no substantial chance that the case would have continued on for an unreasonable time.

Given the circumstances of this case — the adverse rulings which confronted Massey, the indifferent testimony of the Woodwards, Massey's theory of the case, Massey's right to call for evidence in his favor, the fact that the proposed evidence was

material, and the fact that it was corroborative — we conclude that the trial court erred in excluding Langston's testimony.

■ We reject the Commonwealth's contention, based on *Rasnake* v. *Commonwealth*, 135 Va. 677, 115 S.E. 543 (1923), that the trial court here was merely exercising its discretion to limit the number of witnesses on a particular point. First, *Rasnake*, which concerned an effort to prove a decedent's propensity for violence by proof of incidents of violent conduct, is distinguishable on its facts. Second, Langston would have been only the third witness to the events at the Moose Lodge to support Massey's view of the case. Given Massey's constitutional right to develop evidence in his favor, it is difficult to conclude that it would be fair to limit him to his testimony and that of Mr. Saylor.

Moreover, we find no merit in the Commonwealth's suggestion that Langston's testimony was properly excluded because it concerned a point not in dispute. The Commonwealth contends that since the prosecutrix admitted kissing Massey and sitting on his lap, Langston's testimony was unnecessary. But the Commonwealth misses the point of the dispute. The prosecutrix did not admit consent. She merely admitted some affectionate acts towards Massey. Langston's testimony goes beyond mere affection and suggests sexually solicitous conduct which cuts against the prosecutrix's credibility, suggests consent, and bolsters Massey's credibility.

For all the foregoing reasons, the judgment will be reversed and the case remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*