UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Petty, Malveaux and Senior Judge Annunziata
Argued at Alexandria, Virginia

MICHAEL CIVIS

v.        Record No. 1560-17-4

FAUQUIER COUNTY DEPARTMENT
  OF SOCIAL SERVICES

MEMORANDUM OPINION* BY
JUDGE ROSEMARIE ANNUNZIATA
AUGUST 21, 2018

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Jeffrey W. Parker, Judge

Harold N. Ward, Jr., for appellant.

No brief or argument for appellee.[1]

Michael Civis (father) appeals the orders finding that his youngest child is at risk of being

abused or neglected and approving the goal of adoption.  Father argues that the circuit court erred by

(1) admitting into evidence the Adjudication and Disposition Hearings Order from the Circuit Court

of Frederick County, Maryland, filed December 16, 2014; (2) admitting into evidence the

Memorandum of Decision from the Superior Court of New Jersey, Chancery Division, Family Part,

Atlantic County, filed June 16, 2015; (3) admitting into evidence the Civil Action Order from the

Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, filed June 15,

2015; (4) overruling father's objection to Dr. Edwin Carter's answer to whether Dr. Carter had an

opinion as to father's ability to care for a young child because Dr. Carter's reply was not responsive;

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Anne Wren Norloff, guardian *ad litem* for the minor child, submitted a letter stating that she joined in and relied on the brief submitted by the appellee.  However, the appellee did not file a brief.

(5) directing counsel to limit his cross-examination of Dr. Carter to issues relating to father, as opposed to Saria Civis (mother); (6) overruling father's objection about a lack of foundation to Dr. Carter's response to mother's question about her diagnosis of dyslexia and her ability to collect disability benefits; (7) permitting the Fauquier County Department of Social Services (the Department) to present additional evidence after it rested its case; (8) characterizing the social worker's answer regarding the reason for the removal of the child, and father's restatement of her response, as "not being her answer;" (9) asking the Department if it were going to object to father's question to the social worker about the ability to schedule a quick doctor's appointment for the child's jaundice; (10) overruling father's renewed motion to strike; (11) finding that the child was at risk of abuse or neglect; (12) approving the foster care plan with the goal of adoption; and (13) approving the permanency plan with the goal of adoption.[2] We find no error, and affirm the decision of the circuit court.

## BACKGROUND

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 386, 719 S.E.2d 329, 334 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180, 409 S.E.2d 16, 18 (1991)).

Father and mother are the biological parents of eight children, but only their youngest child is the subject of this appeal.[3] The parents have a long history of involvement with Maryland Department of Social Services, Delaware Child Protective Services, and New Jersey Division of Child Protection and Permanency. In 2011, Maryland Child Protective Services

---

[2] Father included sixteen assignments of error in his opening brief, but withdrew three of them, which are not discussed herein.

[3] Mother has three other children whose father is not Michael Civis. Mother testified that her three oldest children live with her mother.

found that the children were abused or neglected. The family subsequently moved to Delaware and then New Jersey. In February 2012, the New Jersey Division of Child Protection and Permanency removed the parents' five oldest children from their custody due to inadequate shelter, food, clothing, medical care, and supervision, as well as concerns about the children's hygiene and the parents' mental health. The New Jersey Division of Child Protection and Permanency tried to provide services to the parents, but the parents refused to cooperate. On June 15, 2015, the Superior Court of New Jersey in Atlantic County terminated mother's and father's parental rights to their five oldest children.

The parents returned to Maryland in April 2012 after New Jersey placed their five children in foster care. In 2012 and 2013, mother gave birth to two additional children while she and father lived in Maryland. The Maryland Department of Social Services became involved with the family and offered services to the parents, but to no avail. In November 2014, the Frederick County, Maryland Department of Social Services removed the two children from the parents' care, and in December 2014, the Circuit Court for Frederick County, Maryland found the parents' two children had been abused and neglected and that they were in need of assistance.

In 2015, after Maryland had placed the two children in foster care, the parents moved to Virginia and, in December 2015, mother gave birth to the child who is the subject of this appeal. There were no concerns about the child's health when he was born; however, he subsequently developed jaundice. The Department received a child protective services referral from the hospital based on their concerns about the parents' mental health and because the parents previously had had children removed from their care. A social worker met the parents and the child at the hotel where they were staying. A few days later, the Department contacted the Frederick County, Maryland Department of Social Services and learned of the removal of the parents' other seven children in Maryland and New Jersey. The prior terminations raised

- 3 -

concerns that the child was at risk for abuse or neglect, and the Department removed the youngest child from the parents' custody on December 28, 2015. When the child came into the Department's care, he was "very jaundiced" and required immediate hospitalization for treatment.[4]

On January 20, 2016, the Fauquier County Juvenile and Domestic Relations District Court (the JDR court) entered an order finding the child was at risk of being abused or neglected. On January 27, 2016, the Department filed a foster care plan with the goal of adoption because of the previous involuntary terminations of mother's and father's parental rights to five of their children in New Jersey and the foster care plans with goals of adoption for the two children in Maryland.

The Department referred father for a psychological evaluation. On March 23, 2016, Dr. Edwin Carter conducted tests, interviewed father, and prepared a report that explained his findings and conclusions. Dr. Carter described father as "experiencing multiple cognitive difficulties and general mood dysregulation, both of which are significantly impacting his ability to communicate with others and to function adequately." Dr. Carter noted that father has problems with short-term memory, working memory, verbal abstract reasoning, and executive functioning. Father told Dr. Carter that he "had an incident causing a serious TBI [traumatic brain injury] at some point in his life and . . . that he was comatose for a significant amount of time." Father also reported having been diagnosed with bipolar disorder, for which he took medication, a diagnosis that Dr. Carter confirmed. Dr. Carter concluded that "it was obvious" that father could not "independently parent children" and found it "hard to imagine a set of circumstances which would allow [father], even with significant support, to raise a child."

---

[4] Mother and father previously had scheduled a doctor's appointment for the child to be examined for jaundice on December 29, 2015, the day after the Department removed the child.

In 2016, Maryland terminated the parents' parental rights to their two children. On July 12, 2016, the JDR court entered a dispositional order noting the risk of abuse or neglect had been adjudicated and approving the foster care plan with the goal of adoption. Mother and father appealed the dispositional order to the circuit court.

On August 9, 2017, the parties appeared before the circuit court. Over father's objection, the circuit court accepted into evidence copies of the Maryland and New Jersey orders regarding the parents' other seven children. The Department presented expert testimony from Dr. Carter and his written reports, in which he opined that neither parent, whether individually or collectively, was capable of providing adequate care for a child. Dr. Carter stated that, considering father's limitations, he could not care for himself, much less a child. The Department also presented evidence that the child was "doing really well" in foster care and was "on track developmentally."

At the hearing, father testified that he and mother were no longer homeless, that they were renting a three-bedroom, single-family home in Maryland, and that he received social security disability and Medicare benefits. He asserted he was capable of raising his child and that he would do whatever was necessary to have the child returned to him. At the conclusion of the evidence, father made a motion to strike, which the circuit court denied.

After hearing the evidence and argument, the circuit court found the child was at risk of abuse or neglect and approved the goal of adoption. This appeal followed.[5]

_____

[5] Mother also appealed the circuit court's rulings. See S. Civis v. Fauquier Cty. Dep't of Soc. Servs., Record No. 1726-17-4.

ANALYSIS

*Admissibility of out-of-state court orders*

Father argues that the circuit court erred by admitting into evidence the Maryland and New Jersey orders because they did not meet the authentication requirements under Code § 8.01-389. We disagree.

"Generally, the admissibility of evidence 'is within the broad discretion of the trial court, and an [evidentiary] ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Surles v. Mayer, 48 Va. App. 146, 177, 628 S.E.2d 563, 578 (2006) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)) (brackets in original).

"The records of any judicial proceeding and any other official record of any court of another state . . . shall be received as prima facie evidence provided that such records are certified by the clerk of the court where preserved to be a true record." Code § 8.01-389(A1).

> The use of the term "copy teste," "true copy," or "certified copy" or a substantially similar term on a certification affixed or annexed to a copy of an official record maintained by a clerk of court that bears the signature of the clerk or any deputy clerk, and that has the name of the court where such record is preserved on the document or on the certification, shall be prima facie proof that such record is certified by such clerk to be a true copy of the official record kept in the office of the clerk. Nothing herein shall be construed to require or prevent a clerk from using an official seal or prevent a clerk from using any other acceptable method of certification for a court record.

Code § 8.01-389(E).

The Department offered into evidence as its Exhibit 1 the Maryland court order that found two of the parties' children were abused and neglected and that they were in need of assistance. The Maryland court order included the Seal of the Circuit Court for Frederick County, Maryland, and the following certification:

> I HEREBY **CERTIFY** that the afore going [sic] is a full, true and correct copy of the **ADJUDICATION AND DISPOSITION**

**HEARINGS ORDER** IN THE MATTER OF: **[D.C.] and [M.C.]** filed **December 16, 2014.**

**Civil Case Number: 10-I-14-21194 and 10-I-14-21195** taken and copied from the record in proceedings in the Circuit Court for Frederick County, Maryland.

In Testimony Whereof, I hereto subscribe my name and affix the Seal of the Circuit Court for Frederick County at Frederick, Maryland, this **14th** day of **January 2015,** A.D.

The certification was signed by Sandra K. Dalton above the title, "Clerk of the Circuit for Frederick County, Maryland."

Father opposed the admission of the Maryland court order contending it lacked a "triple seal."[6] However, when asked by the circuit court if father could provide the court with any legal authority stating that a triple seal was required for out-of-state orders, father was unable to do so. The circuit court reviewed Code § 8.01-389 and found that a triple seal was not required,[7] and held that the Maryland court order was properly certified under Code § 8.01-389(A1). The circuit court did not abuse its discretion in admitting the Maryland court order under Code § 8.01-389(A1). The contested Maryland court order included the seal from the Circuit Court of Frederick County, Maryland and a certification from the clerk of court, with the clerk's signature. Under the Virginia Supreme Court's holding in Medici v. Commonwealth, 260 Va. 223, 230-31, 532 S.E.2d 28, 32-33 (2000), the authorization requirements were met by the Maryland court order.[8]

---

[6] A triple seal includes a certification by the clerk of the court and a judge, as well as the seal of the court, to prove the authenticity of a court document. See 28 U.S.C. § 1738.

[7] In 1996, the General Assembly removed the requirement from Code § 8.01-389(A1) that a judge from the out-of-state court also had to certify the authenticity of the judicial record. See Dingus v. Commonwealth, 23 Va. App. 382, 391 n.3, 477 S.E.2d 303, 307 n.3 (1996).

[8] In Medici, a California court order that evidenced the seal of the Orange County Superior Court and a stamp reading, "Allen Slater, Executive Officer and Clerk of the Superior Court of the State of California, in and for the County of Orange," together with the signature of

Father also challenged the admission of the Department's Exhibit 2, the Memorandum of Decision from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, filed June 16, 2015, and decided June 15, 2015. The Memorandum of Decision included a seal from the Superior Court of New Jersey and the signature of Jeffrey J. Waldman, J.S.C. The Department also offered into evidence as its Exhibit 3 the Civil Action Order from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, filed June 15, 2015. The Civil Action Order was endorsed by "Hon. Jeffrey J. Waldman, J.S.C." The Department also provided the circuit court with a separate document that stated:

> I FLORINE C. ALEXANDER, Division Manager for the Family Part of the Superior Court, Chancery Division, Atlantic-Cape May Vicinage, DO HEREBY CERTIFY that the foregoing is a true and correct copy of DCPP vs. Civis, Saria & Michael as filed and recorded, on the 15th day of June A.D., 2015 in the Family Part of Superior Court, 1201 Bacharach Boulevard, Atlantic City, New Jersey 08401.

The document included a seal from the Superior Court of New Jersey, with the signatures of Florine Alexander, the Division Manager of the Family Part, and Chara T. Ale, the Team Leader of the Family Part.

Father objected to the admission of the New Jersey documents. With respect to the Civil Action Order and the accompanying certification, father first questioned whether the authority of a division manager and team leader was the same as the authority of a clerk of court. The circuit court found that the certification was sufficient to authenticate the Civil Action Order and admitted Exhibit 3.

Father also objected because "the certification [from the Memorandum of Decision] appears to be from someone other – who is not identified as the clerk of the court." After the

"Flor L. Perez," next to the word, "Deputy" was found to comply with the requirements of Code § 8.01-389(A1). Medici, 260 Va. at 230-31, 532 S.E.2d at 32.

- 8 -

circuit court determined that the initials "JSC," which appear next to the name "Jeffrey J. Waldman," on the Memorandum meant "Judge superior court," the circuit court then reviewed Exhibits 2 and 3 together because the Memorandum of Decision appeared to be an explanation for the court's rulings in the Civil Action Order. Based on the circuit court's determination that both documents had the same docket numbers and same parties and that they were decided by the same judge on the same day, it held there were "sufficient legitimacy and connection between Exhibit 3 and Exhibit 2 to justify the admission into evidence of Exhibit No. 2." Both the Order and the Memorandum were, therefore, admitted over father's objections.

Based on the record, we find that the circuit court did not abuse its discretion in admitting Exhibits 2 and 3 because the documents bore a clear relationship one to the other and the certification provided was sufficient to meet the requirements of Code § 8.01-389(A1).

*Dr. Carter's testimony*

Father argues that several evidentiary rulings made by the circuit court concerning Dr. Carter's expert testimony were erroneous. However, if we assume without deciding that the circuit court's evidentiary rulings were erroneous, the errors were harmless. "We 'will not reverse a trial court for evidentiary errors that were harmless to the ultimate result.'" Carter v. Commonwealth, 293 Va. 537, 544, 800 S.E.2d 498, 502 (2017) (quoting Shifflett v. Commonwealth, 289 Va. 10, 12, 766 S.E.2d 906, 908 (2015)). "In Virginia, non-constitutional error is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" Andrews v. Creacey, 56 Va. App. 606, 625, 696 S.E.2d 218, 227 (2010) (quoting Code § 8.01-678).

Further, "whether the evidence admitted in error is merely 'cumulative' of other, undisputed evidence" is also relevant to the harmless error analysis. Id. (quoting Brecht v. Abrahamson, 507

U.S. 619, 639 (1993)).  "Cumulative testimony is repetitive testimony that restates what has been said already and adds nothing to it.  It is testimony of the same kind and character as that already given."  Id. (quoting Massey v. Commonwealth, 230 Va. 436, 442, 337 S.E.2d 754, 758 (1985)).

In this case, father objected to Dr. Carter's answer as "not responsive" when the Department asked Dr. Carter whether he thought father had the ability to provide care for a young child.  Dr. Carter responded, "I think he can't take care of himself very well, much less . . . ," at which point the circuit court interrupted Dr. Carter to clarify whether Dr. Carter said "can" or "cannot."  After Dr. Carter responded, "Cannot," father objected, stating, "[t]he question was can he take care of a child."  The circuit court overruled the objection, explaining, "Well if he can't take care of himself, maybe he can't take care of a child."  Dr. Carter interjected that he intended to add "[m]uch less a child" and said "[t]here was a comma in [his response]."  Any error that father claims occurred was harmless because Dr. Carter explained in his report as well as in his testimony his concerns and doubts about father's ability to care for a child, considering father's severe limitations. Id.

Similarly, assuming the circuit court erred by limiting father's questions to Dr. Carter to those regarding the father, and not the mother, it is harmless.  The mother had the opportunity to cross-examine Dr. Carter, and the circuit court had ample evidence concerning mother's abilities and how they bore on the overall fitness of the parents to care for the child.  Id.

Finally, during mother's cross-examination of Dr. Carter, father objected to Dr. Carter's testimony that most people do not get social security disability benefits based on dyslexia, claiming lack of foundation.  The circuit court overruled the objection.  Any error in the court's ruling was harmless because mother later testified that she had received social security benefits in the past due to her "learning disability and dyslexia with no mental issue."  Id.

In short, contrary to father's arguments, any errors resulting from the circuit court's evidentiary rulings were harmless because there was ample evidence in support of the court's ultimate holding. Jenkins, 12 Va. App. at 1185-86, 409 S.E.2d at 21 (An error may be found harmless when "overwhelming expert and other evidence support[s] the court's ultimate holding.").

*Reopening the Department's case*

Father argues that the circuit court erred by permitting the Department to present additional evidence after it rested its case. After Dr. Carter testified, the circuit court announced it would take a brief recess. However, prior to the recess, father asked whether the Department was going to call additional witnesses. The Department said it was not and rested its case. When the trial resumed, the Department asked the court's permission to call the social worker as a witness in order have the foster care plan admitted. The court overruled father's objections, finding there would be "no harm," and granted the Department's request to call another witness.

> It is well settled that the reopening of a case and the admission of additional evidence after one or both parties have rested is a matter within the discretion of the trial court and its action will not be reviewed unless it affirmatively appears that this discretion has been abused or unless the admission of such additional evidence works surprise or injustice to the other party.

Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 568, 811 S.E.2d 835, 846 (2018) (quoting Fink v. Higgins Gas & Oil Co., 203 Va. 86, 89, 122 S.E.2d 539, 541-42 (1961)). "[A]lthough it has been said that the court should not reopen a case except for good reasons and on proper showing, it is not . . . justified in closing the case until all the evidence, offered in good faith and necessary to the ends of justice, has been heard." Id. (quoting Fink, 203 Va. at 90, 122 S.E.2d at 542).

Permitting the Department to reopen its case and introduce the foster care plans through the social worker constituted neither surprise nor injustice to father's case. Father was not surprised about the admission of the foster care plans because they previously were filed with the JDR court

in January 2016 and August 2016. In addition, father had an opportunity at the circuit court hearing to cross-examine the social worker about the foster care plans. Considering the circumstances, the circuit court did not abuse its discretion in allowing the Department to present additional evidence after it had rested its case. The foster care plans were offered in good faith. They established the prior proceedings that had brought the matter before the court for decision and were admitted to ensure a just result. We find no abuse of discretion in their admission.

*The social worker's testimony*

Father admits that he did not preserve the arguments in the assignments of error relating to the social worker's testimony, but asks this Court to consider them pursuant to the good cause and ends of justice exception to Rule 5A:18.[9] Father had the opportunity to object, but failed to do so; therefore, the good cause exception does not apply. See M. Morgan Cherry & Assocs. v. Cherry, 38 Va. App. 693, 702, 568 S.E.2d 391, 396 (2002) (*en banc*) (holding that Rule 5A:18 applied because the party failed, "without good cause," to object to the evidence).

"The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" Pearce v. Commonwealth, 53 Va. App. 113, 123, 669 S.E.2d 384, 390 (2008) (quoting Bazemore v. Commonwealth, 42 Va. App. 203, 219, 590 S.E.2d 602, 609 (2004) (*en banc*)). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." Le v. Commonwealth, 65 Va. App. 66, 73, 774 S.E.2d 475, 479 (2015) (quoting Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997)).

Father argues that the circuit court erred by characterizing the father's restatement of the social worker's testimony regarding the reason for the child's removal as "not being her answer."

---

[9] "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18.

Specifically, when the social worker explained the "child was removed based on the --- due to being at risk from the prior adjudications and the prior terminations," father asked, "So the jaundice had nothing to do with it [the removal] then?" The circuit court interrupted correcting father's restatement of the social worker's answer, stating father was "misstating her response." Father failed to note any objections to the circuit court's ruling and followed up with additional questions to the social worker that confirmed the prior terminations were the primary reason for the removal. Father's additional questions confirmed that the child also was jaundiced.

Father also claims the circuit court erred by asking the Department whether it was going to object to the following question father posed in cross-examining the social worker:

> So, I guess, my question is – and I don't know if this is calling for speculation, but if you had decided not to remove the child immediately due to the terminations, would you have been able to get the child in to see a doctor within two hours in the parents' custody for the jaundice?

Before the social worker could respond, the circuit court asked the Department whether it was going to object to father's question. The Department responded, "I think that's been asked and answered too." The circuit court stated, "I was waiting for the objection. Sustained. It's speculative. It's hypothetical. We're not going to ask that." Father did not object and continued with his cross-examination.

Based on this record, we find father has failed to affirmatively show that a miscarriage of justice has occurred as required to apply the ends of justice exception to Rule 5A:18. In both instances, father was given the opportunity to question the social worker about the Department's reasons for removing the child. After the circuit court told father that he was misstating the social worker's response, father clarified with the social worker that the prior terminations constituted the primary reasons for the removal. Indeed, father himself noted that his follow-up question may be "calling for speculation." The court intervened at that point and asked the Department whether it

- 13 -

was going to object. Ultimately, the court found the question was speculative. Father had ample opportunity to explore the basis for the removal, and the testimony established that the prior removals were the primary reasons for the removal. Because we find no miscarriage of justice occurred, pursuant to Rule 5A:18, these assignments of error will not be considered by this Court.

*Court's finding of child being at risk of abuse or neglect and approval of the goal of adoption*

Father argues that the circuit court erred in denying his renewed motion to strike, finding that the child was at risk of abuse or neglect and in approving the goal of adoption because the Department failed to prove its case by a preponderance of the evidence. Father asserts that the best interests of the child supported a foster care plan goal of return home, as opposed to adoption.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190, 717 S.E.2d 811, 814 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)). "In matters of a child's welfare, [circuit] courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168, 754 S.E.2d 922, 927 (2014) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)). "This Court presumes that the circuit court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Id. (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463).

Proof by a preponderance of the evidence is the appropriate standard for abuse and neglect cases, as well as approval of foster care plans. See Cumbo v. Dickenson Cty. Dep't of Soc. Servs., 62 Va. App. 124, 130, 742 S.E.2d 885, 888 (2013) (abuse and neglect); Padilla v. Norfolk Div. of Soc. Servs., 22 Va. App. 643, 645, 472 S.E.2d 648, 649 (1996) (approval of foster care plan).

- 14 -

Code § 16.1-228(1) defines an abused or neglected child as any child:

> Whose parents or other person responsible for his care creates or inflicts, threatens to create or inflict, or allows to be created or inflicted upon such child a physical or mental injury by other than accidental means, or creates a substantial risk of death, disfigurement or impairment of bodily or mental functions . . . .

The "statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child. The term 'substantial risk' speaks *in futuro* . . . ." Jenkins, 12 Va. App. at 1183, 409 S.E.2d at 19. A child need not "suffer an actual injury from the behavior of his or her parent before receiving the Commonwealth's protection." Jackson v. W., 14 Va. App. 391, 402, 419 S.E.2d 385, 391 (1992).

In announcing its ruling, the circuit court initially noted the Department's "almost . . . conclusory finding in advance that [the] parties [were not] capable of parenting their own child because of previous behaviors which may have been reduced or eliminated," but concluded that "one of the surest indicators of future behavior is past behavior." The court underscored that father had had his parental rights terminated to five of his children by New Jersey in 2015 and to two of his children by Maryland in 2016. See Code § 16.1-283(E)(i).[10] In consideration of those terminations and Dr. Carter's testimony in which he expressed serious concern about father's ability to parent the child, given father's significant and fixed cognitive defects, the court entered its finding that the children were at risk of abuse and neglect. Although father questioned the credibility of the Department's witnesses, the circuit court found them to be credible. "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has discretion to accept or reject any of the witness' testimony."

---

[10] A court may terminate a parent's parental rights "if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that (i) the residual parental rights of the parent regarding a sibling of the child have previously been involuntarily terminated . . . ." Code § 16.1-283(E).

- 15 -

Layman v. Layman, 62 Va. App. 134, 137, 742 S.E.2d 890, 891 (2013) (quoting Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*)). Based on the record, we find the circuit court did not err in finding that the child was at risk of abuse or neglect.

We find no error in the circuit court's conclusion that a goal of return home was not in the child's best interests. Dr. Carter conducted a detailed psychological evaluation of father and concluded it was "hard to imagine a set of circumstances which would allow [father], even with significant support, to raise a child." Father had eight children, and all of them had been removed from his care. Although father expressed his willingness to "do anything" to have the child returned to him, the evidence proved that father lacked the ability to parent a child safely. "[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold." Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)). Considering the totality of the circumstances, we find the circuit court did not err in approving the goal of adoption.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed. This case is remanded to the circuit court to remand to the JDR court for any further action as the case may require.

Affirmed and remanded.

- 16 -