COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Fulton and White
Argued at Fredericksburg, Virginia


QUADELL A. GRIMES

MEMORANDUM OPINION* BY
v.        Record No. 1325-21-4                    JUDGE KIMBERLEY SLAYTON WHITE
                                                  FEBRUARY 21, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
Brian M. Madden, Judge

Patrick Woolley (Price Benowitz, LLP, on brief), for appellant.

(Jason S. Miyares, Attorney General; David M. Uberman, Assistant
Attorney General, on brief), for appellee.


A jury convicted Quadell A. Grimes of second-degree murder and use of a firearm in the

commission of a felony.  Grimes contends that the trial court erred in refusing to award him a new

trial because the jury allegedly saw him in custody before deliberating.  Grimes also argues that the

evidence was insufficient to prove malice.  Finally, Grimes asserts that the trial court erred by

limiting his testimony regarding the victim's incarceration before the incident.  For the following

reasons, we affirm the trial court's judgment.[1]

## BACKGROUND

On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Commonwealth was precluded from argument in this matter for failure to timely
submit a brief.  Rule 5A:26.  In accordance with the discretion provided this Court regarding
consideration of appellees' untimely briefs, neither was the Commonwealth's brief considered in
this matter.  *Id.*

UNPUBLISHED

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On the evening of October 28, 2022, William Winfield drove his friends Eddie Payne and Kevin Riley to a TGI Fridays in Winchester, Virginia, where Payne and Riley shared five beers and Winfield drank two mixed drinks. Devon Benetiz, a mutual friend, arrived and joined the group. Payne, Riley, and Benetiz agreed to meet for dinner at another restaurant, Okinawa. Shortly before 9:00 p.m., Benetiz left TGI Fridays to get a table at Okinawa.

Winfield drove Payne and Riley to Okinawa and parked in front of the restaurant. A BMW SUV was parked about a space and a half away, "backed into" the parking space. Riley got out of Winfield's car and walked toward the BMW, saying "[w]hat's up with that?" As Winfield prepared to leave, he saw Riley standing between the two vehicles with "his arms down by his side." When Winfield rolled down his window to say goodbye to his friends, he heard a gunshot in the parking lot. Riley "made a loud grunting sound" and collapsed as the BMW sped away.

Police arrived in response to Winfield's 911 call and had Riley transported to a hospital, where he died from a gunshot wound. Police searched Riley's person and Winfield's car and did not find any weapons.

Winchester Police Detective Jesse Thurman interviewed witnesses at the scene of the shooting and developed Grimes as a suspect. On October 29, 2020, Detective Thurman drove to Grimes' apartment in Hagerstown, Maryland, but no one answered when he knocked on the door. In early November, Detective Thurman executed a search warrant on Grimes' apartment where he found a box of .40 caliber ammunition. He did not locate Grimes' BMW.

Deputy Sheriff Brandon Hazelwood of the Frederick County Sheriff's Office, an expert in "forensic mapping," used Grimes' cell phone records to chart his location during and after the shooting. Deputy Hazelwood determined that between 9:37 p.m. and 11:11 p.m. on October 28, 2020, Grimes drove eastbound on Route 66 from Winchester, Virginia to South Hagerstown, Maryland. At 9:12 a.m. on October 29, 2020, Grimes stopped in Annapolis, Maryland.

On January 19, 2021, a grand jury indicted Grimes for first-degree murder and use of a firearm in the commission of a felony. Eight days later, Grimes turned himself in to Winchester police after learning of the charges and retaining a lawyer.

At trial, Winfield testified that he knew the gunshot "definitely came from the BMW" because he was parked directly beside the BMW when it occurred. Winfield stated that he knew that Riley did not carry a gun because Riley was a convicted felon, had been incarcerated, and was on probation when the shooting occurred. Payne also testified that Riley did not carry firearms because of his convicted felon status.[2]

Dr. Carmen Coles, an expert in forensic pathology, testified that she found a .38 caliber bullet inside Riley's body during his autopsy. She also testified that the bullet had fatally penetrated his heart and lungs. In addition, Dr. Kevin Schneider, an expert in forensic toxicology, testified that Riley's BAC during the shooting was .0048.

Shane Bowling testified[3] that he shared a jail cell with Grimes while incarcerated for three days in November of 2020. Bowling testified that Grimes told him that he "didn't get along" with Riley and that they had "argued back and forth" on social media. Describing the

---

[2] Winfield and Payne both acknowledged that they had criminal records: Winfield, a misdemeanor theft conviction in 2011; Payne, six felony convictions for drug and theft offenses and one felony conviction for "wearing a mask."

[3] Acknowledging his "extensive criminal history," Bowling testified that he had felony charges pending in three jurisdictions and hoped to receive reduced sentences or "some help with programs" in exchange for his testimony.

incident, Grimes said that Riley recognized him, unzipped his jacket, and walked toward Grimes' BMW. Grimes stated that he "felt that [Riley] was reaching [into] his jacket for something," so he shot Riley when "he got to the window." Bowling testified that Grimes acknowledged that he did not see whether Riley was armed and that Grimes fled from police because he was "riding dirty."[4] He also testified that Grimes stated that he was "running narcotics" from New York to Virginia. Grimes told him that he was feuding over territory with Riley, who he alleged was also a drug dealer.

Grimes moved to strike the first-degree murder charge at the conclusion of the Commonwealth's evidence, arguing that the evidence failed to prove that he acted with malice or premeditation. The trial court reduced the charge to second-degree murder, concluding that the jury could infer malice from Grimes' use of a deadly weapon but that there was insufficient evidence of premeditation.

Before the defense presented its case, the Commonwealth moved the trial court to preclude Grimes from testifying that he was afraid of Riley because Riley had been convicted of a felony drug offense and recently had been released from prison. The trial court ruled that Grimes could testify that Riley was a convicted felon and had posted a threat on social media, but not that he had recently been released from prison.

Denying that he knew Riley "personally," Grimes testified that in August 2019, Riley had posted a threat on Instagram that stated, "PSA. Ya'll [sic] know I'm a still dog walk Quadell's ass when I see him. Pussy ass."[5] Grimes testified that he did not know why Riley had posted the message and denied responding to it. He claimed that the post "put fear in [his] mind" because

---

[4] Grimes testified at trial that "riding dirty" is a colloquialism for possessing drugs while operating a vehicle.

[5] Grimes testified that "dog walk" was slang for beating someone and dragging them "like a dog."

he knew that Riley was a convicted felon and Grimes often traveled to Winchester to visit his children and other relatives. Grimes also testified that he had encountered Riley twice in 2020 and Riley had "flipped [him] off" each time.

Grimes testified that leading up to the shooting, Riley stared at him and approached him "in an angry demeanor." Fearing for his safety, Grimes retrieved a 9-millimeter caliber handgun from the center console and placed it beside him. Grimes testified that although he was "scared," he rolled down his window as Riley approached because Grimes "wanted to communicate that there [wa]s no problem." Grimes claimed that Riley told him, "I am going to finish this." When Grimes attempted to defuse the conflict, Riley replied, "fuck that, I am going to kill you." Riley then unzipped his hoodie and reached toward his waist. Grimes testified that at that moment, he "felt like [his] life was in danger" so he "protected" himself. Grimes denied using a .38 caliber handgun to shoot Riley, maintaining that he had exchanged his ".38 Special" for a 9-millimeter pistol at a firearms dealership.

Grimes testified that he fled because he feared that Riley's friends would ambush and shoot him. Admitting that he threw his gun out of the window while driving on the highway, Grimes claimed that he feared that police would believe he was "armed and dangerous" and "pull [him] over and kill [him]." Grimes testified that he abandoned his BMW in Washington, D.C., but denied hiding it. He also denied telling Bowling that he was "riding dirty" or in a "drug dispute" with Riley.[6]

After closing argument and before the jury retired to deliberate, Grimes' counsel alerted the trial court that he believed some jurors had seen Grimes in custody as deputies escorted him past an open jury room. Defense counsel stated, "I think the Court just needs to be aware[,] but I

---

[6] At the conclusion of all the evidence, the trial court denied Grimes' renewed motion to strike made on the same grounds.

don't really know what we can do." The trial court stated, "[t]hat should not have happened." The Commonwealth asserted that the incident was not "overly prejudicial," but "[i]t is a question of how the defense chooses to handle it." The trial court noted the issue for the record, and the parties agreed that the jury could retire to deliberate.

The jury convicted Grimes of second-degree murder and use of a firearm in the commission of a felony. At sentencing, Grimes argued that the evidence was insufficient to prove he acted with malice when he shot Riley. In addition, Grimes moved to set aside the verdict and award him a new trial alleging that jurors inadvertently saw him in the deputies' custody. The trial court found that there was no evidence that jurors had seen Grimes in custody and his motion for a new trial was untimely. The trial court also found that the evidence proved malice. Grimes appeals.

ANALYSIS

I. Motion for New Trial

Grimes contends that the trial court should have set aside the verdict and awarded him a new trial because he "was deprived of the presumption of innocence when the full jury was made to see [him] in [the] custody of the sheriff just before deliberations." We do not consider Grimes' argument because he has not preserved it for appellate review.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. Accordingly, "this Court 'will not consider an argument on appeal [that] was not presented to the trial court.'" *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004) (alteration in original) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)). Moreover, appellate courts "will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the

same general issue." *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc) (citing *Floyd v. Commonwealth*, 219 Va. 575, 584 (1978)). "Specificity and timeliness undergird the contemporaneous objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019); *Brown v. Commonwealth*, 279 Va. 210, 217 (2010). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Bethea*, 297 Va. at 743 (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

Our Supreme Court has held that a defendant must make a motion for mistrial before the jury retires or it "is untimely and properly refused." *Maxwell v. Commonwealth*, 287 Va. 258, 268 (2014) (quoting *Cheng v. Commonwealth*, 240 Va. 26, 39 (1990)).

The record here establishes that Grimes did not do anything of consequence when he learned that the jury may have seen him in custody. He did not produce any evidence or proffer of what the jury observed or how, he did not ask for a relevant jury instruction from the court, and he did not move the court to declare a mistrial. Instead, Grimes first argued for mistrial during his motion to set aside the verdict *after* the jury had convicted him. Therefore, Grimes' objection was untimely, and his argument is waived. *Id.* Although there are exceptions to Rule 5A:18, Grimes has not invoked them, and the Court will not do so sua sponte. *Edwards*, 41 Va. App. at 761.

## II. Sufficiency

Grimes argues that the evidence was insufficient to prove malice. As Grimes does not cite any authorities or principles of law to support his argument, we do not consider it.

"Rule 5A:20(e) requires a party to include in his brief: 'argument—including principles of law and the authorities,' for each assignment of error." *Conley v. Commonwealth*, 74 Va. App. 658, 681 (2022) (quoting Rule 5A:20(e)). "'[W]hen a party's "failure to strictly adhere

to the requirements of Rule 5A:20(e)" is significant,' this Court may treat the question as waived." *Id.* (quoting *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017)). The Commonwealth in that case did not raise any Rule 5A:20 concerns in its brief.

We have explained why this Court requires adherence to Rule 5A:20(e):

> [A] court of review is entitled to have the issues clearly defined and to be cited pertinent authority. The appellate court is not a depository in which the appellant may dump the burden of argument and research. To ignore such a rule by addressing the case on the merits would require this court to be an advocate for, as well as the judge of the correctness of, [appellant's] position on the issues he raises. On the other hand, strict compliance with the rules permits a reviewing court to ascertain the integrity of the parties' assertions which is essential to an accurate determination of the issues raised on appeal.

*Bartley*, 67 Va. App. at 744 (second alteration in original) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734-35 (2008), *aff'd in part, rev'd in part*, 279 Va. 52 (2010) (not addressing Rule 5A:20)).

Grimes' brief makes only a cursory reference to the applicable standard of review, exhorting us to "review the jury's decision to see if reasonable jurors could have made the choices that the jury did make" under the plain-error statute Code § 8.01-680. *Couture v. Commonwealth*, 51 Va. App. 239, 248 (2008) (quoting *Pease v. Commonwealth*, 39 Va. App. 342, 355 (2002) (en banc), *aff'd*, 266 Va. 397 (2003)). Grimes' brief does not contain any authority or legal principles to support his claim that the evidence failed to prove malice. Grimes' failure to adhere to Rule 5A:20(e)'s requirements is significant. Therefore, we do not consider this matter further.

### III. Admissibility

Finally, Grimes asserts that the trial court "erred by refusing to allow [him] to testify that he was aware that [Riley] had been recently released from prison when he made public threats" against him. Grimes argues that the trial court erroneously concluded that Riley's release from

- 8 -

prison constituted an inadmissible "prior bad act." He contends that the excluded testimony "provides necessary context without which the jury could not fairly adjudicate the reasonableness of [his] apprehension of bodily harm."

The trial court is afforded broad discretion with regards to the admissibility of evidence, and such ruling may only be disturbed upon a finding of the abuse of discretion. *Blain v. Commonwealth*, 7 Va. App. 10, 16 (1988); *see also Branham v. Commonwealth*, 283 Va. 273, 281 (2012). "In evaluating whether a trial court abused its discretion . . . , 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports [that] action.'" *Hicks v. Commonwealth*, 71 Va. App. 255, 270 (2019) (alterations in original) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). This Court will not find an abuse of discretion in an evidentiary ruling unless we find that no reasonable jurist would have so ruled. *Id.*

We find that while Grimes' excluded testimony may not necessarily be best categorized as evidence of a "prior bad act," it was cumulative and was not relevant. "Cumulative testimony is repetitive testimony that restates what has been said already and adds nothing to it. It is testimony of the same kind and character as that already given. There is no substantial dispute that where evidence is merely cumulative its introduction may be limited by the court." *Massey v. Commonwealth*, 230 Va. 436, 442 (1985) (citation omitted). However, even cumulative evidence may be admitted if it is found to be relevant. *Id.*

The record here establishes that no abuse of discretion occurred because the excluded testimony was not only cumulative of other evidence properly before the jury, but it was also lacking in sufficient relevance. Before Grimes testified at trial, multiple witnesses testified that Riley was a convicted felon. Winfield testified specifically that Riley *had been incarcerated* and was on probation when the shooting occurred. Grimes argues that the proximity of time between

- 9 -

the online threat and Riley's release is relevant to his perception of Riley as a threat.  However, Grimes had encountered Riley twice during the 14 months before the shooting.  On both occasions, the entirety of their interaction was Riley "flipping [Grimes] off."  Additionally, no evidence was presented that Grimes had anything to do with Riley's incarceration.  Thus, Grimes' proffered testimony that Riley had just left prison when he published the threat was not relevant and was "merely 'cumulative' of other, undisputed evidence."  *Schwartz v. Schwartz*, 46 Va. App. 145, 160 (2005) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 639 (1993)).

CONCLUSION

For the above reasons, the trial court's judgment is affirmed.

*Affirmed.*